**Howard B. QUINN and Charlotte J. Quinn, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 74–1989.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1975.

Decided Oct. 17, 1975.

Samuel E. Hirsch, Chicago, Ill., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., William A. Friedlander, Atty., Tax Div., Dept. of Justice, Washington, D. C., Meade Whitaker, Washington, D. C., for respondent-appellee.

Before PELL and STEVENS, Circuit Judges, and PERRY,* Senior District Judge.

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

# 619

PELL, Circuit Judge.

This is an appeal from a decision of the United States Tax Court, 62 T.C. 223 (1974), holding Charlotte J. Quinn and Howard B. Quinn liable for additional tax for their taxable year of 1963. Charlotte alone appeals.

Howard was chairman of the board of directors of Beverly Savings and Loan Association (Beverly); Charlotte was a member of the board of directors and senior vice president. Title to the real estate occupied and leased by Beverly was in a bank as trustee. Howard was the sole beneficiary of the trust.

On March 28, 1963, a meeting of the board of directors was held. Charlotte was present and signed the call and waiver of notice of the meeting. During the meeting, Howard discussed the possibility of advanced payment of rent by Beverly in order to realize a 5% discount. No resolution on the subject was adopted. An April 3, 1963, a check requisition in the amount of $553,166.66 was prepared and a check was issued payable directly to Quinn Management Company, rather than to the trustee, for prepayment of rent expenses. Both Charlotte and Howard were authorized to sign checks on the account of Quinn Management Company into which the check was deposited. A special meeting of the board was held on April 5, 1963. Again Charlotte signed a waiver of notice of the meeting, which indicated that the purpose of the meeting was to consider "the repayment to the Association of rental monies advanced to Quinn Management Company." After noting that action on the advance rental payment had been discussed at the March meeting, the board minutes show that it was "the consensus of the meeting that this action was not advisable and not in the best interests of the Association, notwithstanding the 6% discount allowed." We fail to discern a reference to the fact that the advancement had not been authorized in the first place by the board.

A resolution was adopted requiring the funds to be repaid before April 22, 1963, after Howard "volunteered" to make reimbursement. $53,166.66 was repaid on or about April 22, 1963, but no further payments were made during that year. Repayment of the remaining $500,000.00 was discussed at several meetings of the board. Charlotte was present at these meetings. On July 18, 1963, the board upon recommendation of a law firm, requested and obtained a note from Howard for $500,000.00 and a pledge of his permanent reserve shares in Beverly (subject to a lien held by a bank). Howard was later indicted and convicted of fraud under 18 U.S.C. § 657, as a result of these transactions. *United States v. Quinn*, 398 F.2d 298 (7th Cir. 1968), *cert. denied*, 393 U.S. 983, 89 S.Ct. 451, 21 L.Ed.2d 444.

Howard and Charlotte filed a joint income tax return for the year 1963 on the cash basis. The funds received as advance payment of rent were not included in taxable income, but the return contained the following disclosure:

"During the taxable year the taxpayer, Howard B. Quinn, received the amount of $553,166.66 from the Beverly Savings and Loan Association. Shortly thereafter the amount of $53,166.66 was repaid and a note for the balance of $500,000.00 was given to the Association to evidence said debt. As security for this loan, the taxpayer assigned his interest in a land trust which held title to certain real estate to the Association. In view of these facts the transaction is considered as a loan and, accordingly, is not reported in this return as taxable income."

The notice of deficiency stated that Howard and Charlotte owed tax on $500,000.00 of additional income based on the above transactions. Other assessments were also made, but all issues were settled prior to trial except the issue of whether Charlotte owed tax on the $500,000.00. A stipulation of facts was entered prior to trial which contained the following statement:

"Petitioners concede that the net amount of $500,000.00 received in 1963

($553,166.66 less $53,166.66) represents taxable income, but petitioner Charlotte J. Quinn contends that she is relieved from any resulting liability by virtue of *Int.Rev.Code of 1954,* § 6013(e)."

The tax court found in favor of the Commissioner on all issues. On appeal Charlotte argues 1) that the $500,000.00 was not taxable income, 2) that § 6013(e)[1] protects her from liability, and 3) that if § 6013(e) does not protect her from liability, it is unconstitutional "as depriving her of property without due process of law in violation of the Fifth Amendment of the United States Constitution."

## I. Taxable Income

### A. *The Stipulation*

■ The sentence in the stipulation of facts quoted above would appear to foreclose Charlotte's argument that the $500,000.00 was not taxable income. Nevertheless, the tax court did not rely on it.

At the beginning of the trial in this case, a colloquy occurred concerning the reasons for which Charlotte should be permitted to deny liability in light of the stipulation and the position taken by Howard, which was inconsistent with hers. Counsel for Charlotte made a statement which was ambiguous as to whether he was challenging the inclusion of the $500,000.00 as taxable income or only Charlotte's liability under the innocent spouse provisions. Counsel for the Government made a statement that Charlotte should only be allowed to make a challenge under the innocent spouse provision. The court then stated:

"Well, it's my understanding from our conversation in Chambers that the stipulation to the effect that Mr. Quinn is liable for the deficiency which has been asserted against him was not intended to prevent Mrs. Quinn from contending that she does

not hold [sic; owe?] the amount alleged."

The Commissioner's counsel stated: "That is correct." It is thus unclear whether the court was referring solely to an innocent spouse challenge or whether the court believed the stipulation had been modified in chambers so that Charlotte could make the challenge on any basis. As stated above, the tax court did not rely on the stipulation in its opinion. The court stated:

"First, notwithstanding the stipulation quoted [above], which appears technically to foreclose her argument, Mrs. Quinn contends that the principle of *Wilbur Buff,* 58 T.C. 224 (1972), rev'd 496 F.2d 847 (C.A. 2, 1974), precludes the inclusion of the $500,000 in petitioners' taxable income for 1963. We do not agree." 62 T.C. at 228.

The court then proceeded to consider if the $500,000.00 was taxable income and found that it was. Although counsel for the Commissioner quotes the stipulation in its statement of facts to this court, it does not argue it as a basis for decision.

Under the confusing circumstances present in this case, fairness requires us to consider the issue on the merits.

Before doing so, however, we must consider the threshold matter of whether the Commissioner is precluded from asserting the taxability of the advance rental payment under the circumstances here involved because of acquiescence in opinions contrary to his present position.

### B. *Acquiescence in Prior Cases*

■ The present Internal Revenue Service practice of stating "acquiescence" or "nonacquiescence" to indicate its position on decisions of the tax court is largely a result of historical accident. In the early days of income taxation, the Commissioner had as long as a year to appeal from an adverse decision of the Board of Tax Appeals, the predecessor of today's tax court; and therefore the Commissioner began the practice of indi-

---

1. All statutory references are to the Internal Revenue Code of 1954 as amended (Title 26, U.S.C.)

cating his position on whether he intended to appeal. This purpose was largely lost when in 1932 the time for an appeal was reduced to three months; nevertheless the acquiescence program continued as an indication of whether the Commissioner planned to continue to litigate the resolution of the issues posed by a case. While an acquiescence in a case may indicate that one would be likely to obtain a favorable ruling on a similar point, the acquiescence program is not intended to substitute for the ruling or regulation program. *See generally CCH 1975 Stand. Fed. Tax Rep.* ¶ 5980A.018 *et seq.* 1969–2 Cum.Bull. xxiii, for example, states:

"Notice that the Commissioner has acquiesced on [sic] nonacquiesced in a decision of the Tax Court relates only to the issue or issues decided adversely to the Government.

"Actions of acquiescence in adverse decisions shall be relied on by Revenue officers and others concerned as conclusions of the Service only to the application of the law to the facts in the particular case. . . .

"Acquiescence in a decision means acceptance by the Service of the conclusion reached, and does not necessarily mean acceptance and approval of any or all of the reasons assigned by the Court for its conclusions."

Though not initially raised by petitioner in this case, it came to this court's attention that the Commissioner had acquiesced in cases which held that a taxpayer need not include in gross income amounts received during a taxable year if prior to the close of the taxable year the taxpayer recognized an obligation to repay the amounts received. We ordered supplemental briefing on whether the Commissioner's acquiescence in these cases barred the Government from assessing a tax in contravention of the rule as to which there was acquiescence.

Counsel for the Government concedes, at least for the present purposes, that *Clark v. Commissioner,* 11 T.C. 672 (1948), nonacq. 1949–1 Cum.Bull. 5; acq. 1953–1 Cum.Bull. 3, is closely analogous to this case. The commissioner argued that sums received as salary had to be taken into gross income by the taxpayer under the claim of right doctrine. (For discussion of the claim of right doctrine, see Part I.C., *infra.*) The court held that the portion of these sums which the taxpayer had agreed to repay were not taxable even though repayment had not been made even at the time of the court's decision.

This court questioned Government counsel regarding *Gaddy v. Commissioner,* 38 T.C. 943 (1962), *aff'd in part, rev'd in part,* 344 F.2d 460 (5th Cir. 1965), and *Bishop v. Commissioner,* 25 T.C. 969 (1956). Counsel correctly distinguishes *Bishop* because, even though the court talks in terms of the "recognition of obligation to repay" cases, repayment was actually made on the last day of the tax year in question. Counsel seems to indicate that the *Gaddy* case is also distinguishable without giving specific reasons. We cannot agree.

*Gaddy* involved the tax year of 1957. The taxpayer had received overpayments of $39,401.90. The tax court refused to accept a stipulation of the parties and held on a factual basis that $14,990.01 had been received in 1956 rather than 1957. The commissioner nonacquiesced on this issue, 1969–2 Cum.Bull. xxvi (Footnote 16 indicates this; text erroneously references footnote 15.), and the tax court decision was overturned on appeal. Regarding the remaining $24,441.89, the taxpayer argued that "where an obligation to repay has been recognized in the year of overpayment by both parties, the amounts of overpayment are without the scope of the claim-of-right doctrine." 38 T.C. at 947. The tax court held that this was a correct statement of the law, but in applying it to the facts found that only $444.40 of the debt was acknowledged in 1957. It found that the remaining $23,967.49 was not acknowledged until 1958 and therefore was taxable under the claim of right doctrine in 1957. In 1969–2 Cum. Bull. xxiv the Commissioner indicated

"[a]cquiescence in the issue relating to whether the receipt of $24,411.89 [$444.40 plus $23,967.49] under a rental agreement was received under a claim of right in 1957." The Government did not challenge the tax court's holding with respect to the $444.40 on appeal, and the taxpayer's argument that the $23,967.49 should not have been taxed in 1957 was rejected. Thus, the only thing on which the Commissioner could have been indicating his position was the recognition of the obligation to repay rule. Government counsel points out that both parties seemed to have accepted this rule as the applicable law from the outset of the case, but that is not the point. Following the decision, the Commissioner by acquiescence in the decision indicated that employees of the Service should thereafter follow the rule. See also *Curran Realty Co., Inc. v. Commissioner,* 15 T.C. 341 (1950), acq. 1951–1 Cum.Bull. 2, acq. withdrawn on an unrelated issue 1954–1 Cum.Bull. 8.

■ It is clear that the Commissioner has the power under § 7805(b) of the Code to withdraw an acquiescence retroactively and may do so even though a taxpayer has relied upon the Commissioner's mistake to his detriment. *Dixon v. United States,* 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965). The Supreme Court stated:

> "This principle is no more than a reflection of the fact that Congress, not the Commissioner, prescribes the tax laws. The Commissioner's rulings have only such force as Congress chooses to give them, and Congress has not given them the force of law. Consequently it would appear that the Commissioner's acquiescence in an erroneous decision, published as a ruling, cannot in and of itself bar the United States from collecting a tax otherwise lawfully due." *Id.* at 73, 85 S.Ct. at 1304.

In *Dixon* the Commissioner's acquiescence had been replaced with nonacquiescence. In *In re Estate of Lumpkin,* 474 F.2d 1092 (5th Cir. 1973), the Fifth Circuit held in favor of the Government where an acquiescence had been outstanding at the time the litigation commenced but was withdrawn before the Fifth Circuit's decision. See also *Shakespeare Co. v. United States,* 389 F.2d 772, 182 Ct.Cl. 119 (1968), (private letter rulings not issued to taxpayer no bar); *Chicago, Burlington & Quincy R. Co. v. United States,* 455 F.2d 993, 1013, 197 Ct.Cl. 264 (1972), *rev'd on other issues,* 412 U.S. 401, 93 S.Ct. 2169, 37 L.Ed.2d 30 (1973), (letter of technical advice may be retroactively corrected).

The taxpayer, in her supplemental briefing, relies upon a statement in 9 Mertens, § 50.95, quoted as follows:

> "The Commissioner makes a practice of acquiescing or nonacquiescing in some, though not all, Tax Court decisions, and lists of such decisions are published from time to time in the Internal Revenue Bulletins. The acquiescence is intended to express his acceptance of the decision not only for the particular case (which, of course, he is obliged to do), but also his approval of any general principle embodied in the decision."

This statement would seem to say nothing more than the obvious fact that the word "acquiescence" is synonymous with "assent," and whether that assent is tacit or passive, or even somewhat unhappily induced, it implicitly indicates a type of approval. We are concerned here, however, with the question of whether the Commissioner is bound thereafter by this assent-approval which he subsequently determines was incorrect.

The only other authority cited by the taxpayer is *Beck v. Commissioner,* 179 F.2d 688 (7th Cir. 1950), in which case, according to the taxpayer, this court held that "[t]he significance of the acquiescence in a Tax Court decision is that the officers and employees of the Bureau of Internal Revenue are supposed to rely upon that case as a precedent in the disposition of other cases." This quotation, however, came from the dissenting opinion filed in that case, 179 F.2d at

690, in which the majority found the case in which there had been acquiescence to be inapplicable because of a difference of facts. The majority therefore did not address itself to the matter of acquiescence.

We also note *United States v. City Loan and Savings Company,* 287 F.2d 612 (6th Cir. 1961), in which the court noted that the taxpayer's treatment of tax liability was based upon a tax court decision in which there had been acquiescence. Conceding that the question was a close one, the court opined, in affirming a judgment for the taxpayer, that the administrative practice of the Commissioner of following the particular tax court case for so many years was not to be lightly discarded.

Both the last mentioned case and the dissenting opinion in *Beck* were written prior to *Dixon* and even if they purported to preclude the Commissioner absolutely from a change of position, which they do not, their effect as authority now would be substantially minimized in view of *Dixon.*

Finally, and in any event, there is an absolute lack of any showing of reliance by Charlotte upon the theory of acquiescence. The first advertence to that subject was in the supplemental briefing on the subject requested by the panel during the course of oral argument. The taxpayer is in no position to claim an abuse of discretion because of reliance to her detriment upon claimed governmental approval of the manner in which the tax matter was handled upon the return she signed.

■ Accordingly, we hold that an outstanding acquiescence in a case does not bar the Commissioner from collecting tax in contravention of the rule stated in the case as to which there had been acquiescence. Notwithstanding this holding, we will not be unmindful in determining the proper construction of a provision of the Internal Revenue Code that at some time in the past, tacit approval had been given to a rule which it is now believed is incorrect. It would

also appear to us that better administrative practice would be for there to be a formal withdrawal of acquiescence when a rule has been determined to be incorrect rather than doing so on an ad hoc, case-by-case basis. This might, at least, avoid the unfortunate situation, which appears particularly true in tax litigation which ordinarily seems to occur many years after the fact, in which a taxpayer relies to his detriment upon what he believes to be an official governmental position. While the holding in the present case would seem to provide small incentive for periodic routine reexamination for viability purposes of outstanding acquiescences, nevertheless, we cannot say that circumstances of acquiescence and reliance might not be conceived that would make it unconscionable for the Commissioner to prevail in litigation.

### C. Effect of Debt Treatment

■ In *North American Oil v. Burnet,* 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932), the Supreme Court established what has come to be known as the claim of right doctrine. It stated:

"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." *Id.* at 424, 52 S.Ct. at 615.

In *James v. United States,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), the Court reaffirmed the doctrine, expanded it to include embezzled funds, and made clear that the essence of the doctrine was the acquisition of "earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition." *Id.* at 219, 81 S.Ct. at 1055. The Court went on to hold that in years in which an embezzler repays funds, he may take a deduction. In *Whitaker v. Commissioner,* 259 F.2d

379 (5th Cir. 1958), the Fifth Circuit aptly stated the general rule on the timing of deductions when repayment of funds received under a claim of right is required: "Any amount repaid is deductible in the year of repayment (on the cash basis) or the year in which the liability to repay becomes fixed (on the accrual basis)." *Id.* at 382.

In this case, if Howard had repaid the $500,000.00 during 1963, it would be clear that he could have deducted this amount from his income. Thus, Howard was allowed a deduction for 1963 of $53,166.66, the amount actually repaid during that year. There also would have been no question that had he paid some additional amount in some subsequent year, which he did not do, the amount or amounts so repaid would have been deductible in the year or years of repayment. These deductions would, of course, have accrued to Charlotte's benefit if Howard and Charlotte had filed joint returns. The question in this case is whether an agreement to repay sums received under a claim of right entered before the close of the taxable year in which those funds were received is sufficient to take them out of the claim of right doctrine. In *United States v. Merrill,* 211 F.2d 297 (9th Cir. 1954), the Ninth Circuit held in favor of a taxpayer on this issue.

*Merrill* involved several issues, and only one is relevant to this case. The court determined that the taxpayer received $2,500.00 to which he was not entitled in 1939 and $7,500.00 in 1940. Before the close of 1940 the error was discovered, and the taxpayer made an entry on his books showing that he owed $10,000.00. Repayment was actually made in 1943. The court held that the $2,500.00 was received under a claim of right and therefore taxable in 1939. It held that the $7,500.00 was not taxable because the mistake was recognized before the close of the year. The rationale of the court was that the claim of right doctrine is a harsh one and that it should not be unnecessarily extended. The purpose of the doctrine, according to the court, is to avoid the need for Internal Revenue to have to decide the merits of claims among taxpayers. The court found that this need was not present when the taxpayers resolved their dispute between themselves. The court in *Merrill* relied on two cases: *Van Fleet v. Commissioner,* 2 B.T.A. 825 (1925), and *Curran Realty Co., Inc. v. Commissioner, supra. Van Fleet* was decided prior to *North American Oil v. Burnet, supra,* and its reasoning is so broad as to conflict with the claim of right doctrine established in *North American Oil.* Hence, *Van Fleet* is very limited support for the *Merrill* exception to the claim of right doctrine. *Curran Realty* involved similar facts to *Merrill* and the present case, but the court treated the problem as an accounting problem and did not attempt to reconcile its conclusions with *North American Oil.*

The tax court in *Gaddy v. Commissioner, supra,* simply followed *Merrill,* also citing *Bates Motor Transport Lines v. Commissioner,* 200 F.2d 20 (7th Cir. 1952). *Bates* is not relevant precedent because it involved an accrual basis taxpayer, and there is no question that the rules for such a taxpayer are different. *Whitaker v. Commissioner, supra.*

Recently the Second Circuit distinguished *Merrill* in *Buff v. Commissioner,* 496 F.2d 847 (2d Cir. 1974). The court found it unnecessary to consider whether to follow *Merrill* because it found that the taxpayer's agreement in the case before it was a sham whereas in *Merrill* the Ninth Circuit placed much emphasis on the taxpayer's good faith.

In our opinion, *Merrill* was incorrectly decided. We therefore hold that the *Merrill* exception to the claim of right doctrine should not be applied in this circuit.[2]

---

**2.** Inasmuch as Part I.C. of this opinion adopts a position on an issue which creates a conflict between circuits, this opinion has been circulated among all judges of this court in regular active service and no judge has voted for a rehearing *en banc.*

Since the 16th Amendment was adopted, each system of income taxation enacted has embodied the concept of annual accounting. *Burnet v. Sanford & Brooks Co.,* 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 (1931). The concept of annual accounting, however, should only affect the timing of tax consequences prescribed for a given type of transaction, not the nature of the consequences. For example, in *Spring City Foundry Co. v. Commissioner,* 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200 (1934), an accrual basis taxpayer argued that when it was ascertained that an account receivable was partially worthless in the year of sale, that portion was not gross income in that year. The Court held that the right to receive (under the accrual basis) determined the amount to be included in gross income and that a deduction could be taken when allowed by statute. That the partial worthlessness occurred in the year of sale did not affect these rules. Similarly, once funds are received under a claim of right, they must be included in gross income. A deduction may only be taken when allowed by statute. A cash basis taxpayer's giving of his own note is not sufficient to support a deduction in the year given; it will only support a deduction in the year in which the note is paid. *Helvering v. Price,* 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836 (1940). *See Whitaker v. Commissioner, supra.* Thus, recognition of the obligation to repay funds received under a claim of right has no tax consequences regardless of whether it occurs in the year the funds were received or a later year. This view was favored by three dissenting judges in the tax court decision of *Buff v. Commissioner,* 58 T.C. 224, 234 (1972), and was expressed in the concurring appellate opinion. 496 F.2d at 849.

We note that it appears the theory adopted in *Merrill* was first raised in the taxpayer's answering brief on appeal and that the Government may not have answered the merits of the argument but only urged that the issue could not be raised for the first time on appeal. Also, the Ninth Circuit relied heavily on the harsh effect of the claim of right doctrine. We cannot dispute that the doctrine may have a harsh effect if a taxpayer is in a high bracket when he receives the funds and in a lower one in the year in which he gets the deduction. Nevertheless, this harshness is alleviated somewhat by § 1341 of the 1954 Internal Revenue Code.[3] There was no similar relief provision in the 1939 Internal Revenue Code under which *Merrill* was decided. It is our opinion that the remaining harshness is not sufficiently severe to warrant an exception to the general principles discussed above.

## II. Innocent Spouse Provisions

### A. *Statutory Relief Provision*

When certain conditions are met, § 6013(e) relieves a person who is liable for tax on the income of that person's spouse because he or she signed a joint return.[4] The tax court found that Char-

---

3. Subject to various complex special rules, § 1341 provides that when a deduction in excess of $3,000.00 is allowable because a taxpayer has restored funds received in an earlier year and included in gross income for that year under the claim of right doctrine, then, in effect, the taxpayer is allowed to reduce his tax in the present year by the amount the deduction would allow in the year in which the taxpayer was in the higher bracket. Of course, if the taxpayer were in the higher bracket in the earlier year, he would have lost the use of the funds for the interim; and the relief is only available where the amount of the restoration is greater than $3,000.00.

4. Section 6013(e) provides:

"(e) Spouse relieved of liability in certain cases.—

(1) In general.—Under regulations prescribed by the Secretary or his delegate, if—

(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,

(B) the other spouse establishes that in signing the return he or she did not know of,

lotte failed to satisfy the conditions of the section, first, in that an amount in excess of 25 percent of the amount stated on the return (computed under the special rules of § 6013(e)(2)) was not omitted,[5] and second, she did not show that she neither knew nor had reason to know of the omission. With regard to the first basis of the finding of ineligibility, it appears that the notation with regard to the receipt of the advance rental on the joint return was "adequate to apprise the Secretary . . . of the nature and amount of such item," and therefore this ground alone would appear sufficient to support this phase of the tax court decision.

█ Further, as to the second basis of the decision, Charlotte had every reason to know that Howard received the advance rental payment. She attended several board meetings where it was discussed; an explanation of the item was contained on the return she signed even though the amount was not included in taxable income. The knowledge contemplated by the statute is not knowledge of the tax consequences of a transaction but rather knowledge of the transaction itself. *McCoy v. Commissioner,* 57 T.C. 732 (1972). Since all three of the grounds specified in § 6013 must be met to qualify for the relief under that section, such relief was not available to Charlotte.

and had no reason to know of, such omission, and

   (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.

   (2) Special rules.—For purposes of paragraph (1)—

     (A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable

## B. *Constitutionality*

█ Counsel for Charlotte argues that if § 6013(e) by its terms provides Charlotte no relief, the section is unconstitutional. We first note that for Charlotte to obtain relief under this phase of her argument, she not only must show that the conditions which Congress placed on the relief are constitutionally offensive, but also she must show that relief is constitutionally compelled. Her difficulty in this respect is occasioned by the fact that the section is a relief provision; *viz.,* but for the section, Charlotte would be liable for the tax and when a section of a statute is declared void, the statute cannot be given effect as though the legislature had not enacted the conditions limiting its operation. *Davis v. Wallace,* 257 U.S. 478, 484–85, 42 S.Ct. 164, 66 L.Ed. 325 (1922). The appellant does not address herself to this phase of the matter but on the basis that her statements are sufficiently broad to treat her argument as such, we will assume for the purposes of this opinion that a finding that § 6013(e) was unconstitutional would provide Charlotte with some relief.

The essential points of Charlotte's argument are briefly stated by her counsel to this court and therefore we quote them:

"The exemption provided by Congress is based upon the assumption

shall be made without regard to community property laws, and

   (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A)."

5. Under subparagraph (B) of section 6013(e)(2), the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A). Subparagraph (ii) of section 6501(e)(1)(A) reads as follows:

"In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item."

that due to the marital relationship a wife will sign any return that her husband requests her to and that if she refuses, the marital relationship can be seriously jeopardized. . . .

. . . . . .

"It is of course true that Congress has the power to provide reasonable classifications in taxation. However, we contend that the provisions of the statute requiring that the wife had no knowledge of the item at the time of the signing of the return and that the item not be disclosed in the return are clearly unreasonable and defeat the purpose of the statute, namely the preservation of the marital relationship.

"The relief is clearly meted more in a case of where the return discloses the item and where it does not disclose it.

"If the defendant, Charlotte Quinn, or the wife, refuses to sign the return, it is obvious that great strain would be put upon the marital relationship, and that if she refuses to sign the return because it shows it refers to an item not included in gross income, the strain on the marital relationship would probably be immediate and violent. The history of the protection that the common law has given to husband and wife in items involving a marital relationship clearly shows that the law provides that the preservation of a marital relationship is the most important matter. . . .

. . . . . .

" . . . [A] statute requiring that the spouse not know of the transaction and that the item not be disclosed in the return is unreasonable. It defeats the very purpose of the Congress in that the protection of the marital relationship is most urgently needed in the case where the return discloses the item involved."

[redacted] Petitioner's constitutional argument is wholly without merit. Petitioner cites no authority showing that the purpose of the statute was protection of the marital relationship from the stress caused by a wife who refuses to sign an inaccurate return. That the statute affords either spouse relief militates against this conclusion. The Senate Report accompanying the bill which became § 6013(e) states that its purpose is to remedy grave injustices which have occurred under the law then in effect. Though noting that the statute is not limited to such a situation, the report gives the example of the wife held liable for tax on funds embezzled by her husband, not reported as gross income, and squandered by him without her knowledge. No mention is made in the report of preserving the marital union. Sen. Rep.No.91–1537, 91st Cong., 2d Sess. (1971–1 Cum.Bull. 606) U.S.Code Cong. & Admin.News, 1970, p. 6089. The statute in no way draws suspect classifications or invidiously discriminates. It is not vague as applied to this case. We cannot hold that the conditions placed on the relief provision are unreasonable or in any way deny due process.

For the reasons hereinbefore set out, the decision of the tax court is

Affirmed.