LOUIS C. MIRIANI and VERA M. MIRIANI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miriani v. Commissioner
Docket No. 336-73.
United States Tax Court
T.C. Memo 1976-122; 1976 Tax Ct. Memo LEXIS 281; 35 T.C.M. (CCH) 555; T.C.M. (RIA) 760122; April 21, 1976, Filed Howard W. Staiman,Joel J. Morris and Brian Sullivan, for the petitioners. James C. Lynch and Robert D. Kaiser, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax [1] as follows: Additions to Tax Year
Deficiency
Section 6653(b) [2]
1957
$11,784.65
$ 5,892.33
1958
16,262.45
8,131.23
1959
59,870.09
29,935.05
1960
32,008.99
16,004.50
1961
48,274.68
24,137.34
1962
22,569.73
11,284.87
*282 At trial Petitioner Louis C. Miriani conceded his liability for the deficiencies and additions to tax for each of the years in question. The only issue remaining for decision is whether Petitioner Vera M. Miriani is relieved of liability for the income tax deficiencies as an "innocent spouse" pursuant to section 6013(e) of the Internal Revenue Code of 1954. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Louis C. and Vera M. Miriani, husband and wife, resided at 2474 Somerset Blvd., Apartment 104, Troy, Michigan, at the time they filed their petition in this proceeding. Petitioners filed joint Federal income tax returns for the taxable years 1957 through 1962 with the District Director of Internal Revenue, Detroit, Michigan. Petitioner Louis C. Miriani was born on January 1, 1897, and graduated *283 from the University of Detroit Law School in 1922. In 1929 Mr. Miriani married Petitioner Vera M. Miriani. In 1947 Louis Miriani was elected to the Common Council of the City of Detroit and served as its president from 1949 through 1957. In November 1957 Mr. Miriani was elected Mayor of the City of Detroit and served in that capacity through the year 1961. In 1961 Mr. Miriani ran for re-election as Mayor of Detroit but was defeated. In January 1962 he was appointed executive vice president of the Aronsson Printing Co., Detroit, Michigan, where he served in an administrative and sales capacity. In 1965 he unsuccessfully sought re-election to the Common Council of the City of Detroit. In 1929 petitioners moved into a house on Marygrove Avenue in the City of Detroit and lived there continuously until the house was sold in 1970. Their standard of living, while comfortable, was modest and well within Mr. Miriani's salary. They did not entertain lavishly nor take extensive vacation trips. Except when their children were small, petitioners had no domestic help. Their standard of living did not alter substantially after 1957, when Mr. Miriani was elected Mayor of Detroit. *284 For the duration of their marriage, with the exception of the period in 1970 and 1971 when he was in prison, Mr. Miriani has handled the family's financial affairs. Mrs. Miriani was merely given an allowance for use in purchasing her clothes, food for the family, and household supplies. Until approximately 1970, most of the Miriani's bank accounts were in the joint names of Mr. and Mrs. Miriani. Mr. Miriani maintained joint accounts for Mrs. Miriani's convenience and access in case of emergencies. With the exception of the account into which Mrs. Miriani's allowance was deposited, petitioners regarded all of the accounts as the property of Mr. Miriani. Although the bank statements relating to those accounts considered as belonging to Mr. Miriani were sent to petitioners' home, Mrs. Miriani did not open them or have knowledge of their contents. Only on one occasion prior to the time Mr. Miriani was sent to prison for income tax evasion did Mrs. Miriani make a withdrawal from an account other than the one in which her allowance was deposited. During the years 1957 through 1962, Louis Miriani received numerous campaign contributions, a portion of which were used for political *285 purposes and the balance of which were either used to purchase municipal bonds or deposited in the joint accounts which petitioners considered to be the property of Mr. Miriani. The contributions were not reported on petitioners' joint Federal income tax returns. Despite the fact that Mrs. Miriani was active in her husband's political campaigns, she was never involved in the fundraising or financing aspects of the campaigns. These functions were always performed by others. Although Mrs. Miriani was aware that contributions were essential to her husband's campaigns, she had no knowledge of the amount of contributions received or the identity of specific contributors. In 1941 Louis Miriani began a systematic program of purchasing United States Savings Bonds. His purpose was to provide for their joint security upon his retirement and for Mrs. Miriani's security after his death. On December 31, 1956, Mr. and Mrs. Miriani held U.S. Savings Bonds in their joint names having an aggregate cost basis of $104,887.50. From 1957 through 1959, Mr. Miriani made additional purchases of U.S. Savings Bonds. All of these bonds were purchased in petitioners' joint names, except for the bonds *286 purchased in 1959, which were purchased in Mr. Miriani's name alone. Petitioners viewed the U.S. Savings Bonds as their retirement fund and regarded them as the property of both. None of the political contributions received were used to purchase Savings Bonds. All of the bonds were redeemed, primarily by Louis Miriani, between 1962 and 1970. Vera Miriani received approximately $68,000 from the proceeds of such bonds. Petitioner Louis Miriani prepared the joint Federal income tax returns filed by petitioners for the years 1957 through 1962. With the exception of a few relatively minor items, the political contributions were the only amounts omitted from gross income on these returns. Vera Miriani merely signed these returns upon her husband's request, without examining them or having knowledge of their contents. Louis Miriani was convicted of willfully and knowingly attempting to evade income taxes for the years 1959 through 1962. Mr. Miriani incurred legal expenses and fines totaling approximately $260,000 as a result of his prosecution and conviction. In 1972 petitioners' home was burglarized, and the entire contents of Mr. Miriani's safe, consisting of municipal bonds *287 in the principal amount of $132,000 and all of his business and financial records, were stolen. The bonds were recovered, and the proceeds, less expenses of $33,000, were seized by the Internal Revenue Service pursuant to a jeopardy assessment of August 15, 1972. In connection with this assessment, the following bank accounts were seized: Bank
Account Name
Type
Amount Seized
Troy Nat'l Bank
Vera Miriani
Checking
$ 1,800.00
Troy Nat'l Bank
Vera Miriani
Saving
8,500.00
Troy Nat'l Bank
Vera Miriani;
Dolores Deziel
or Mary Christa
Saving
23,499.00
1st Citizens Bank
Vera Miriani or
Mary Christa
Certificate of
Deposit
10,100.44
1st Citizens Bank
Vera Miriani or
Dolores Deziel
Certificate of
Deposit
10,100.44 Stock held in the account of Vera Miriani at Merrill, Lynch, Pierce, Fenner & Smith, a safe deposit box in Louis and Vera Miriani's name at the First Citizens Bank, and a safe deposit box in Vera Miriani's name at the Troy National Bank were also seized by the Internal Revenue Service under the jeopardy assessment. The Commissioner, in his statutory notice of deficiency dated October 12, 1972, determined deficiencies *288 in petitioners' Federal income tax for the years 1957 through 1962 in the amounts of $11,784.65, $16,262.45, $59,870.09, $32,008.99, $48,274.68 and $22,569.73, respectively. The Commissioner also determined that part of the underpayments in tax for each of the years 1957 through 1962 was due to fraud on the part of Louis Miriani. OPINION Section 6013(e)[3] provides that in certain circumstances a spouse who has filed a joint return will be relieved of liability to the extent that such liability results from omissions of gross income attributable to the other spouse. In order for Vera Miriani (hereafter petitioner) to qualify for the relief provided by the statute, the following conditions must be satisfied for each year in question: (1) there must have been omitted from gross income an amount properly includable therein attributable to Louis Miriani which is in excess of 25 percent of the amount of gross income stated in the joint return; (2) petitioner must establish that in signing the return she did not know of, and had no reason to know of, the omissions from income; and (3) taking into account whether or not she significantly benefited from the items omitted from gross income *289 and all other facts and circumstances, it is inequitable to hold her liable for the deficiencies in tax. Although conceding that the first requirement of the "innocent spouse" statute, set forth in paragraph (e) (1) (A), has been satisfied for each year in question, respondent contends that petitioner has failed to meet the requirements of paragraphs (e) (1) (B) and (e) (1) (C) for each of those years. *290 Section 6013 (e) (1) (B) requires that petitioner establish not only that she had no actual knowledge of the omissions, but also that she had no reason to know of the omissions. We are satisfied from the testimony adduced at trial that petitioner had no knowledge of her husband's omissions from income. However, respondent maintains that even if petitioner did not know of the omissions, she was in a position to know, and, therefore, had reason to know of the omissions. In order to establish that she had no reason to know of the omissions, petitioner must show that there were no facts within her knowledge which would have caused a reasonably prudent taxpayer to have known of the omissions. Sanders v. United States,509 F.2d 162 (5th Cir. 1975). This Court has found at least three factors significant in deciding whether a spouse had reason to know of omissions from gross income: (1) unusual or lavish expenditures; [4] (2) participation in business affairs or bookkeeping; [5] and (3) the guilty spouse's refusal to be forthright concerning the couple's income. [6] None of these factors were present under the facts of the instant case. Furthermore, we are satisfied that *291 there were no other facts which should have put petitioner on notice of the omissions. Accordingly, we are convinced that, as a reasonably prudent taxpayer, petitioner had no reason to know of her husband's omissions from income. Section 6013(e)(1)(C) requires a factual determination of whether, after taking into account whether petitioner significantly benefited directly or indirectly from the items omitted from income and taking into account all other facts and circumstances, it is ineguitable to hold her liable for the deficiencies in tax. The House report provides the following guidance to help us in deciding whether this third condition of the statute is satisfied: The third condition requires a factual determination (by the Internal Revenue or the courts) as to whether the spouse seeking relief from liability significantly benefited, directly or indirectly, from the items omitted from gross income. It is not intended that the term "benefit" *292 as used here include ordinary support of the innocent spouse. Unusual support or transfers of property to the spouse would, however, constitute "benefit" and should be taken into consideration in determining whether the spouse benefited from the items omitted from gross income. Such "benefit" may be received by the spouse several years after the year in which the omitted item should have been included in gross income. For example, if a spouse receives an inheritance of property or life insurance proceeds, and such receipt is traceable to items omitted from gross income by the other spouse in earlier years, that spouse will be considered to have benefited from those items. A mere finding that the spouse "benefited" from the items omitted from gross income will not be sufficient however, to prevent that spouse from obtaining relief from liability for the tax. For the spouse to be prevented from obtaining relief there must also be a finding that the benefit was "significant" and that "taking into account all other facts and circumstances," it is not "inequitable to hold the… spouse liable for the deficiency in tax * * *" * * * [H.Rept. No. 91-1734, to accompany H.R. 19774 (Pub. L. *293 91-679) 3-4 (1970).] Respondent contends that petitioner significantly benefited from the items omitted from gross income through (1) an increase in the value of jointly-held assets, (2) her actual use of the funds held in joint bank accounts, and (3) transfers of property to her by her husband. Respondent first argues that significant benefits were derived by petitioner from increases in jointly-held assets traceable to items omitted from gross income. Mr. Miriani testified at trial that the political contributions were used to purchase municipal bonds and were placed in certain joint bank accounts which the Mirianis considered to be the property of Mr. Miriani. Respondent's position is that the creation of the joint property rights in the bank accounts significantly benefited petitioner because of her legal right to withdraw from such accounts and the fact that she would have become the sole owner of such accounts in the event of the death of Mr. Miriani. Neither the legislative history nor the case law supports respondent's position. See Dakil v. United States,496 F.2d 431 (10th Cir. 1974). Something more, such as the actual use of such funds for other *294 than "ordinary support," is necessary in order for a significant benefit to be conferred within the meaning of the statute. Accordingly, we find that the mere creation of the joint property rights in the bank accounts did not significantly benefit petitioner. Respondent next maintains that petitioner significantly benefited from the items omitted from gross income through the actual use of the funds deposited in the joint bank accounts. However, respondent is only able to point to one instance prior to 1970 when Mr. Miriani was in prison where petitioner made a withdrawal from any of the joint accounts in which the political contributions were deposited. This single withdrawal of $1,000 might have benefited petitioner, but a mere finding that a spouse "benefited" from items omitted from gross income is not sufficient to prevent that spouse from obtaining the relief of the statute. At the very least, there must be a finding that the benefit was "significant." The withdrawal of $1,000 hardly seems significant when viewed in light of the total omissions from income in each year before us. Petitioner testified that she used the funds from these particular accounts for her support *295 while Mr. Miriani was in prison. Such use will not prevent her from satisfying the condition of paragraph (e)(1)(C), because "ordinary support" is not to be taken into consideration in determining whether a spouse benefited from items omitted from gross income. Respondent finally contends that a substantial benefit was derived by petitioner after 1962 by the transfer of assets to her individually. Petitioner argues that the funds in the accounts seized by the government are traceable directly to assets held by petitioners prior to the years in issue. More specifically, petitioner contends that her present individual wealth is traceable to $68,000 in proceeds of U.S. Savings Bonds, the proceeds of the sale of their home and its furnishings, funds acquired through inheritance, insurance proceeds received as a result of the theft of her furs and jewelry, savings invested in a Merrill-Lynch brokerage account, and gifts from Mr. Miriani during the course of their marriage. Having carefully observed the demeanor of the petitioners on the witness stand, we are satisfied that their testimony concerning the sources of Vera Miriani's present net worth is credible and are convinced that *296 it is traceable primarily to sources other than items of omitted income. Respondent's reliance upon our decision in Raymond H. Adams,60 T.C. 300 (1973), is misplaced. In that case the assets which the petitioner received pursuant to a property settlement incident to a divorce were traceable to items omitted from gross income by his former spouse. We recognize the likelihood that at least some portion of petitioner's present net worth is traceable to items omitted from gross income by her husband. However, we need not decide whether petitioner would be considered to have derived a significant benefit from the omitted income if any portion of her present net worth, other than a deminimis amount, was attributable to items omitted from income. For a spouse to be prevented from obtaining relief, there must be a finding that the benefit was "significant" and that "taking into account other facts and circumstances," it is inequitable to hold the spouse liable for the deficiencies in tax. We are convinced that substantially all of petitioner's net worth is directly traceable to assets held prior to the years in issue. In our opinion it would be inequitable *297 to impose liability upon petitioner for the entire amount of the deficiencies in tax if only a relatively small portion of her net worth is attributable to items omitted by her husband from gross income. Accordingly, we find that conditions of paragraph 6013(e)(1)(C) have been satisfied and that petitioner is entitled to the relief afforded by the statute. Decision will be entered under Rule 155.
Footnotes
1. Respondent concedes that no part of the underpayments in income tax is due to fraud on the part of Vera M. Miriani. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES.-- (1) IN GENERAL. Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) SPECIAL RULES.--For purposes of paragraph (1)-- (A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and (B) the amount omitted from gross income shall be determined in the manner provided by section 6501 (e) (1) (A).↩
4. Patricia E. Mysse,57 T.C. 680, 699↩ (1972). 5. Howard B. Quinn,62 T.C. 223 (1974), affd. 524 F.2d 617↩ (7th Cir. 1975). 6. Raymond H. Adams,60 T.C. 300↩ (1973).