ANN E. BONHAG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bonhag v. Commissioner
Docket No. 6600-77.
United States Tax Court
T.C. Memo 1980-138; 1980 Tax Ct. Memo LEXIS 452; 40 T.C.M. (CCH) 250; T.C.M. (RIA) 80138; April 23, 1980, Filed *452 Held: Petitioner is entitled to relief as an innocent spouse under section 6013(e), I.R.C. 1954. *453 Richard O. Venino, for the petitioner. Patrick E. Whelan, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficinecy of $201,874.57 in petitioner's 1971 Federal income tax, and an addition to tax of $100,937.29 under section 6653(b). [1] By way of amendment to his answer, respondent increased the deficinecy to $567,195.24. After concessions, [2] the only remaining issue for decision is whether petitioner is relieved of tax liability as an innocent spouse under section 6013(e). FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. Ann E. Bonhag (hereinafter petitioner) resided in Spring Lake, New Jersey, when she filed her petition in this case. Petitioner filed (and signed) a joint Federal incoem tax return with her husband, Herman A. Bonhag for the taxable year 1971 with the Internal Revenue Service Center, Holtsville, New York. During the year 1971, and for 36 years prior thereto, *454 Herman A. Bonhag (hereinafter Herman) was employed as an Assistant Vice President of First National City Bank in New York City. In 1965, Edward J. Kelley, a friend and neighbor, entrusted approximately $284,000 with Herman to purchase certificates of deposit at First National City Bank. Instead of investing Kelley's money as instructed, Herman used most of these funds to purchase 2,800 shares of stock of Aetna Casualty and Life Company, registered in Kelley's name. The remaining funds entrusted to Herman were placed in a savings account also in Kelley's name. At no time was Kelley aware of the existence of either the Aetna stock or the savings account. To conceal his diversions of Kelley's money, Herman paid Kelley the quarterly interest ostensibly earned on his certificates of deposit by withdrawing cash from the savings account and periodically selling the Aetna stock. The stock had significantly declined in value over the years and was sold at a loss. By early 1971, the steady payments of this "interest" had exhausted the funds readily available for future distribution to Kelley. During December 1970, an account of First National City Bank known as Heidesam, Inc., presented *455 Herman with a check for $65,000 to be invested in a six-month certificate of deposit. Needing additional funds to continue making the payments to Kelley, Herman issued a fictitious certificate of deposit to Heidesam, Inc., and deposited the $65,000 check in a savings account under a fictitious name, P. Stein. Herman subsequently withdrew monies from this account to pay the interest due Kelley. In February 1971, Heidesam, Inc., requested a $20,000 loan from First National City Bank. Herman granted this loan and withdrew the funds from the fictitious P. Stein savings account. During early 1971, another account of First National City Bank, the World Division Board of Missions of the United Methodist Church - Collins Pension Fund (hereinafter World Division) held an $800,000 off-shore certificate of deposit in the Bahamas branch of the bank due to mature on June 2, 1971. World Division instructed the bank to pay the interest due at maturity and also to renew the deposit for six more months. Contrary to these instructions, Herman directed that the $800,000 be returned to the New York City branch of First National City Bank. On June 3, 1971, Herman filed an application at the *456 bank for the issuance of an $800,000 cashier's check payable to World Division. He personally approved this application and had the cashier's check issued that same day. Herman then deposited the check in a passbook savings account which he opened under the name of World Division. Herman retained custody of the passbook. On June 23, 1971, Herman withdrew $46,285.63 from this account to pay Heidesam, Inc., the net amount owed that corporation. World Division had no knowledge of these actions. On June 9, 1971, Kelley died. In October 1971, Herman visited his widow and informed her that her late husband's investments at the bank totalled $314,510. Although Herman knew that Kelley's investment had been dissipated, he, nevertheless, drew up plans for Mrs. Kelley to reinvest approximately $200,000 in new certificates of deposit, to withdraw $66,000 in cash and to open a savings account for the Estate of Edward J. Kelley to pay estate taxes owing. Herman continued to conceal his defalcations until the end of 1971. On Christmas day of that year, after drinking heavily for hours, Herman broke into tears and revealed to petitioner and two of their children, Peter and Thomas, that *457 he was in serious trouble at the bank and had "blown Ed Kelley's estate." No further elaboration was given at that time. During the following days, Herman discussed his problem in very general terms with Peter and an attorney, Vincent Giaquinto. Herman told them that he had received money from Kelley to invest in certificates of deposit, but failed to do so. He did not reveal any details concerning his diversion of these funds. Neither petitioner nor Thomas were present during any of these conversations. At the suggestion of Vincent Giaquinto, Herman agreed to fully disclose his misappropriations to his superiors at the bank. On January 6, 1972, Peter went to the bank and told his father's superior officer that Herman had mismanaged Kelley's money and wanted to discuss the matter in greater detail. The officer met privately with Herman that afternoon. The following day Herman was questioned by bank officials and special agents of the Federal Bureau of Investigation. He gave a detailed statement to the F.B.I. regarding his actions at the bank. Herman was dismissed from the bank immediately. On September 25, 1972, Herman was indicted in the United States District Court *458 for the Southern District of New York on three counts of embezzlement and 45 counts of willfully making false entries in bank reports and statements with intent to defraud in violation of sections 656 and 1005 of Title 18 of the United States Code. On January 19, 1973, Herman pleaded guilty to the three counts of embezzlement and was sentenced to four years imprisonment on each count, the sentences to run concurrently. The remaining counts in the indictment were dismissed. Herman served 16 months of his prison sentence and was placed on probation for the balance of the four-year term. In 1971, as in prior years, Herman prepared the joint income tax return for himself and petitioner. Herman handled the financial affairs of the family and petitioner routinely signed this return, as she had for the previous 30 years, on February 15, 1972. Petitioner and Herman's standard of living did not change substantially during the period of Herman's embezzlement activities. Herman never gave petitioner additional monies over and above his usual salary from the bank nor did he ever inform petitioner that excess funds were available. In his notice of deficiency addressed to petitioner *459 and Herman, respondent asserted a deficiency for 1971 based upon the omission from income of the sums embezzled by Herman. Petitioner alone has petitioned this Court for a redetermination of that deficiency. ULTIMATE FINDING OF FACT Petitioner did not know or have reason to know of the omissions of income from her 1971 joint Federal income tax return. OPINION As a general rule, when a husband and wife file a joint return each is jointly and generally liable for the tax. Sec. 6013(d)(3). However, section 6013(e)[3] relieves an "innocent spouse" of tax liability resulting from omissions of income attributable to the other spouse if three conditions are met: *460 1. The omission was in excess of 25 percent of the amount of gross income stated on the return; 2. When signing the return, the spouse claiming to be an "innocent spouse" did not know of, and had no reason to know of the omission; and 3. Taking into account all the facts, including whether or not the spouse claiming relief under this provision significantly benefited from the omitted income, it would be inequitable to hold her liable. Terzian v. Commissioner,72 T.C. 1164, 1170 (1979); Fox v. Commissioner,61 T.C. 704, 716 (1974). In this case, the parties have stipulated that the first condition has been satisfied. Moreover, on brief, respondent has conceded that petitioner did not significantly benefit from the funds embezzled by Herman. At issue, therefore, is whether petitioner, in signing the 1971 return, knew or had reason to know of the omitted income. Respondent initially contends that since Herman informed petitioner of his actions on Christmas day 1971, she had actual knowledge of the omitted income when she signed the return in February 1972. We disagree. The record clearly establishes to our satisfaction that although *461 petitioner was aware that Herman was in serious trouble at the bank, she had no actual knowledge of his embezzlement activities. Herman did not reveal his misappropriations to petitioner, nor was she privy to any conversations in which this matter was discussed. Accordingly, we reject respondent's first argument. Respondent next argues that even if petitioner did not in fact know of the omitted income, there were sufficient facts within her knowledge which would have caused a reasonably prudent person under the circumstances of petitioner to have known of the omissions. See Sanders v. United States,509 F. 2d 162 (5th Cir. 1975). We disagree. Upon a careful review of the record, we are convinced that insufficient facts were available to petitioner to provide a reasonably prudent person with reason to know of the omitted embezzlement income. There was no sudden rise in petitioner's and Herman's standard of living from 1965 through 1971 which would have alerted her to any unreported income. Mysse v. Commissioner,57 T.C. 680, 699 (1972). Petitioner did not receive additional monies from Herman over and above his usual salary and he did not *462 present her with lavish gifts. See Sanders v. United States,supra.Moreover, she did not participate in the family's financial affairs nor was she involved in keeping books and records. Compare Quinn v. Commissioner,62 T.C. 223 (1974), affd. 524 F. 2d 617 (7th Cir. 1975). Although petitioner was not totally oblivious since Christmas day 1971, to Herman's problems at the bank, there is simply nothing in the record which would have put her on notice that his problems had anything to do with embezzlement activities. Considering the fact that Herman was able to conceal his actions from bank officials for almost seven years, it is not surprising that she was ignorant of his embezzlement scheme in February 1972, when she signed the joint income tax return. Accordingly, we hold that petitioner is entitled to the benefit provided for an innocent spouse by section 6013(e). Decision will be entered for the petitioner. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. In his answer, respondent conceded that petitioner was not liable for the fraud penalty.↩
3. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.
(e) Spouse Relieved of Liability in Certain Cases.-- (1) In General.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) Special rules.--For purposes of paragraph (1)-- (A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A).↩