Alfred **ALTMAN** and Irene **Altman**, Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

No. 587, Docket 72–1950.

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1973.

Decided March 8, 1973.

Samuel N. Greenspoon, New York City (Harry Simon, New York City, of counsel), for petitioners-appellants.

Louis A. Bradbury, Atty., Tax Division, Department of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., and Meyer Rothwacks and Richard W. Perkins, Attys., Tax Division, Department of Justice, Washington, D. C., of counsel), for respondent-appellee.

Before FRIENDLY, Chief Judge, and ANDERSON and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by the petitioners from a decision of the Tax Court, Hon. Irene F. Scott, 31 CCH Tax Ct.Mem. 91, entered on April 28, 1972, holding that the petitioners had unreported taxable income for the year 1964 in the amount of $122,535.36 and determined a tax deficiency in the amount of $77,890.37. We affirm.

The first question to be determined upon appeal is whether the Tax Court properly decided that the $122,535.36 received by the taxpayer Alfred Altman (Alfred) from his mother Charlotte Altman (Charlotte) on December 15, 1964 was includable in his gross income or was exempt from taxation as a gift. There is no question but that the taxpayer received checks and

securities totalling $122,535.36 from his mother on that date; that it was not reported as income in the 1964 joint return of Alfred and his wife Irene Altman (Irene) and that its exclusion is sought to be justified solely on the ground that it constituted a gift (Int. Rev.Code of 1954, § 102).

▮▮▮ The burden of proving that the transfer of the securities and cash here involved constituted a gift, is upon the taxpayer. Gaugler v. United States, 312 F.2d 681, 684 (2d Cir. 1963). Moreover the crucial test for determining whether or not there was a gift, is the intention with which the transfer of the property was made. This is a question of fact to be determined under all the circumstances with primary weight being accorded to the conclusions of the trier of fact. Commissioner v. Duberstein, 363 U.S. 278, 286–290, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Comtel Corp. v. Commissioner, 376 F.2d 791, 795 (2d Cir.), cert. denied, 389 U.S. 929, 88 S.Ct. 290, 19 L.Ed.2d 280 (1967). In light of these principles, we have no difficulty in finding that the determination made below was not clearly erroneous.

Charlotte inherited from her husband all of his interest in the family baking business which was managed by her son Alfred after his father's death in 1963. The primary evidence of Charlotte's donative intent was the testimony of Irene that at about 11 A.M. on the morning of December 15, 1964, Alfred and Charlotte came to Alfred's home where Charlotte then announced that since Alfred had been such a good son, she had made him a gift of the funds in question. The four bank checks shown to Irene totalled $62,007.86 representing withdrawals from four local banks. All four checks were made out to Alfred and were in Irene's presence delivered to him by his mother. Charlotte then took securities [1] from her handbag, showed the certificates to Irene, signed the backs of them and delivered them to Alfred. The next day Alfred deposited to his bank account the four checks and delivered the stock certificates to his broker. There was further evidence by Irene purporting to establish that the relationship between Charlotte and Alfred and herself was not only amicable on that day but on the next day as well.

The court below found the testimony of Irene "totally unpersuasive." Moreover, the court indicated that even if the events testified to by Irene were factually accurate, if Alfred had in fact frightened and intimidated his mother earlier that morning, she would likely have still been under his influence so that there was no true donative intent on her part. The court indicated that the crucial factual question was what happened earlier on the morning of December 15, 1964.

There was other evidence before the court which would indicate that Charlotte's gift to Alfred was prompted by something less than maternal affection. Leon Miller, who had represented the Altman family business, testified that on December 17th Charlotte advised him that on the morning of December 15, 1964 Alfred had come to her apartment and persuaded her to open her safe on a pretext. He then threatened to throw the family business into bankruptcy and report her to the Internal Revenue Service for alleged violations. He took possession of her bank books, stock certificates and forced her to go with him to various banks and withdraw the proceeds as well as to endorse the securities. On December 18th Charlotte, Adele (Alfred's sister) and Miller visited an assistant district attorney in New York County to bring criminal charges but were advised to seek civil redress. On December 30, 1964 Charlotte commenced a civil action in the New York Supreme Court seeking to regain possession of her property. A non-jury trial was held on April 26, 1966 and judg-

---

1. The securities totalling in value $60,527.-50 included 200 shares of Ekco Products, Inc., 100 shares of General Motors Corp., 100 shares of Stattuck Co. and 630 shares of American Telephone and Telegraph Co.

ment was rendered on July 15, 1966. Justice Harry B. Frank wrote an eight page unreported opinion in which he essentially found that Alfred had converted the securities and cash here in question, as well as other personal property not here pertinent. The judgment directed Alfred to return all of this property, granted an accounting and awarded punitive damages in the sum of $10,000. In his opinion Justice Frank found no basis for finding that Charlotte intended any gift to Alfred but rather that the transfer was prompted by her fear of possible exposure to tax liability and of the ruination of the family business. His opinion castigated Alfred in strong terms.

■ Appellants now urge that the admission below of the Supreme Court file in the civil action brought by Charlotte against Alfred constitutes error. It is argued that under Rule 14(b) of the Rules of Practice of the Tax Court the Commissioner should have pleaded collateral estoppel in his answer if the New York judgment was to be utilized for that purpose. Although the admission of the judgment and file below was objected to, the objection of counsel was not directed to the rule. In fact, as appellants admit in their brief, the lower court did not accept the New York judgment as conclusive under the doctrine of res judicata either as a bar or a collateral estoppel. It was admitted as evidence of its contents. If error [2] was committed in receiving it in evidence we consider it harmless since in any event there was other ample competent evidence *dehors* the judgment to indicate that the transfer here was involuntary. Irene admitted on cross-examination that she knew that Alfred had a date to meet Charlotte on the morning of December 15th; that her mother-in-law Charlotte subsequent-

ly started a civil action in New York to recover the property; that she (Irene) had testified in the case; that Alfred had failed to testify although he was available and knew of the pendency of the action; that Charlotte testified in the proceeding and that she had won the case. Alfred's failure to appear to testify either in the civil action or in the tax proceeding below is indeed significant. We are not impressed with the appellants' argument that the court should have given significance to the failure of the Commissioner to call Charlotte as a witness. She is an octogenerian living in a nursing home. Since the burden of proof is on the taxpayer to establish donative intent, there was more reason for the taxpayer to call her if her testimony was favorable to the present claim.

An examination of Irene's testimony on cross-examination which was at best evasive in contrast to her sharp recollection of the events of December 15, 1964, confirms the trial court's judgment as to her credibility.

While we can agree with the appellants that Charlotte did transfer her money and securities to Alfred so that the mechanical requisites of a gift were established and in fact are not in issue, there was an abject failure to establish donative intent. There is no question but that Adele and Miller were hostile to Alfred but this is no proof that the New York lawsuit was a scheme or plot on their part to defraud Alfred who has in fact fled to Australia where he remains leaving only an unsatisfied judgment behind. Their disaffection is perhaps understandable.

■ The only remaining question is whether Irene who filed a joint return with Alfred in 1964 and is therefore liable for the tax deficiency, is entitled to avoid the joint liability under the provi-

---

2. While a majority of courts will not admit into evidence a judgment in another action (5 J. Wigmore, Evidence 1671(a) (3d ed. 1940)) there is a growing tendency to admit prior *criminal* convictions in subsequent civil actions involving the same transaction. See C. McCormick, Law of Evidence § 318 (2d ed. E. Cleary 1972). See also Matter of Rechtschaffen, 278 N.Y. 336, 16 N.E.2d 357 (1938); Comment, 30 Fordham L.Rev. 786 (1962).

sions of section 6013(e)[3] of the Internal Revenue Code of 1954 as amended. Under this section the spouse is relieved of liability if certain conditions are met. The first is that there has been an omission from gross income properly includable in the return in excess of 25 percent of the gross income stated in the return. This is conceded by the Commissioner. A second requirement (§ 6013(e)(1)(B)) is that the spouse establish that in signing the return she did not know and had no reason to know of the omission. The income tax return which was an exhibit in the proceeding below was executed by Irene on April 14, 1965 and reported a total joint income of $38,334.32. There can be no doubt but that the receipt of cash and securities valued at $122,535.36, more than three times the amount of income reported, was a significant omission from the return. There is no question but that Irene was aware of the receipt of the funds. She testified in detail as to time, place and manner of delivery. Her only claim now is that she believed they were a gift and therefore not income. As we have indicated this is hardly credible in view of the evidence to the contrary. We cannot accept the proposition that Irene had no reason to know that the money and securities received here were not gifts. The civil action to recoup them on the theory that there was a conversion had been commenced in December, 1964. A preliminary injunction restraining Alfred from selling, assigning, pledging or otherwise disposing of the securities or funds was filed on February 17, 1965. Irene was hardly an unsuspecting spouse without reason to understand that her husband had received substantial unreported income. We find that she has failed to sustain the burden imposed by section 6013(e)(1)(B) and to establish that she was the "wholly innocent spouse" that the statute was designed to succor. See S.Rep.No. 91–1537, 91st Cong., 2d Sess., in 1970 U.S.Code, Cong. & Ad.News, pp. 6089, 6090–91.

Affirmed.

---

3. 26 U.S.C. § 6013(e) (1970) provides:

(1) In general.

Under regulations prescribed by the Secretary or his delegate, if—

(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,

(B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and

(C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.

(2) Special rules.

For purposes of paragraph (1)—

(A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and

(B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A).