HERRALD, INC., dba LEDA EXCLUSIVES, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Herrald, Inc. v. Commissioner
Docket Nos. 5075-70, 5076-70, 989-72.
United States Tax Court
T.C. Memo 1976-258; 1976 Tax Ct. Memo LEXIS 145; 35 T.C.M. (CCH) 1129; T.C.M. (RIA) 760258; August 18, 1976, Filed John Lockley, for the petitioners. Randall G. Dick, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Docket
Additions to tax No.
Year
Deficiency
Sec. 6653(b)
5076-70
1963
$ 9,486.63
$ 4,743.32
5075-70
1964
3,553.52
2,227.59
1965
2,021.31
1,010.66
989-72
1963
135,774.82
67,887.41
1964
5,606.16
2,803.08
1965
9,234.22
4,617.11 Because of concessions made by the parties, the only matters before the Court are: (1) whether the income from the sales of art objects in 1963 and 1965 is attributable to Hoyt and Leda Herrald or to their corporation; (2) if the income *146 is attributable to Hoyt and Leda Herrald, whether the omission of that income from their joint income tax returns is due to fraud within the meaning of section 6653(b), I.R.C. 1954; [2] and (3) if the omission is due to fraud, whether Leda Herrald is an innocent spouse under section 6013(e). FINDINGS OF FACT The parties have stipulated that the testimony given and the exhibits received in the case of United States v. Leda Herrald[3] could be received as evidence in this proceeding as if the witnesses had testified and the exhibits had been offered in this proceeding. Other facts with exhibits attached thereto having been stipulated are incorporated herein by this reference. Petitioner Leda Herrald is the surviving spouse and administratrix of the estate of Hoyt W. Herrald, deceased. On February 10, 1972, the date of filing her petition in docket No. 989-72, she resided at 163 Fairoaks Lane, Atherton, California. Petitioner Herrald, Inc., dba Leda Exclusives, is a California corporation which had its principal *147 office at 13 Town & Country Village, Palo Alto, California on August 5, 1970, the date of filing its petitions in docket Nos. 5075-70 and 5076-70. Leda and Hoyt timely filed joint income tax returns for the taxable years 1963, 1964, and 1965 with the District Director of Internal Revenue in San Francisco, California. The omission of income from their joint return for 1964 was due to fraud. For the taxable year 1963 Leda Exclusives filed a corporate income tax return with the District Director of Internal Revenue at San Francisco, California on March 27, 1964. For the taxable years 1964 and 1965 Leda Exclusives filed corporate income tax returns with a special agent of the Internal Revenue Service on March 26, 1966 and May 26, 1966, respectively. The corporate income tax return for 1963 reported taxable income in the amount of $3,137.75. The correct amount of taxable income for that year is $30,603.71. The corporate income tax return for 1964 reported taxable income in the amount of $4,098.41. The correct amount for that year is $20,250.75. The corporate income tax return for 1965 showed a loss of $15,373.13. The correct amount of taxable income is $9,187.77. The omissions *148 of income from the 1963, 1964, and 1965 corporate returns were due to fraud. Leda Exclusives is a retail women's wear and accessory business which Hoyt and Leda Herrald operated in corporate form. During the years in issue they were the sole owners of the corporation. On July 30, 1968, Hoyt W. Herrald died and on September 5, 1968, Leda Herrald was appointed administratrix of the estate of her deceased husband. Leda Herrald, a knowledgable art enthusiast, selected and purchased art objects for Mitzi Briggs during 1963 and 1965. Mitzi Briggs, a friend and neighbor of the Herralds as well as a customer at Leda Exclusives, in turn purchased these art objects in the amounts of $203,574 during 1963 and $8,600 during 1965. Leda and her husband set the price and charged California sales tax for the art objects which Mitzi Briggs purchased during 1963 and 1965. They took the art objects to the home of Mitzi Briggs where they discussed the items and the prices. Usually they took with them, or sent over later, detailed invoices prepared by either Hoyt or Leda. Leda was aware of the fact that a profit was being made from the sale of art objects to Mitzi Briggs. All but two *149 of the checks issued at the direction of Mitzi Briggs for the purchase of the art objects during 1963 and 1965 named Leda Herrald as payee. Leda endorsed these checks. The other two checks issued at the direction of Mitzi Briggs for the payment of art objects named Leda Exclusives as payee. Hoyt and Leda Herrald did not report the income from the sale of art objects to Mitzi Briggs on their 1963 and 1965 income tax returns. Nor did they pay over the sales tax which they collected to the state of California. In May of 1963, Hoyt Herrald requested his accountant Woodrow Morgan to cash three checks totaling approximately $42,000. The checks were made payable to Leda Herrald and were proceeds from the sale of art objects to Mitzi Briggs. Woodrow Morgan at the time of preparing the 1963 joint income tax return of the Herralds inquired about the above-mentioned checks. Hoyt Herrald told him that the checks had nothing to do with the corporation and that the transaction was a personal matter. The Herralds did not discuss the art sales with Morgan until after the Internal Revenue Service began investigating their income tax liabilities. Woodrow Morgan prepared the 1964 and *150 1965 corporate income tax returns of Leda Exclusives during the spring of 1966 and did not find any evidence of art sales or any invoices pertaining to the purchase or sale of art objects. On April 18, 1966, special agent Marc Mott received his assignment to investigate the income tax returns of the Herralds. On May 9, 1966 when Mott met with the Herralds he asked them whether since 1958 they had sold any art or earned any commissions on the sale of art or art objects or received any income in connection with the sale of any art. The Herralds stated that neither they nor their corporation had sold any art at any time. On June 14, 1966, Mott again met with the Herralds and asked them why they had told him at the May 9, 1966 meeting that they had not made any art sales. Leda Herrald replied that she did not think that he had been referring to corporation art sales and that she wanted to protect Mitzi Briggs' identity. Hoyt Herrald replied that he did not think the Internal Revenue Service would make such a detailed investigation. At that same meeting Mott asked if they had any records pertaining to the art sales and the Herralds replied that they did not. However, Leda volunteered *151 that the art which they had purchased and sold to Mitzi Briggs had been purchased at the same price for which it was sold and consequently no profit had been made. Prior to the June 14 meeting the Herralds told Morgan of the investigation and that they had been engaged in the sale of art objects. Hoyt Herrald wanted to know what could be done to reflect these sales for tax purposes. Morgan replied that if he had been asked earlier he would have suggested transferring the art acquired by the Herralds to the corporation so that the corporation could have sold it. Hoyt then told Morgan that he was going to have his attorney prepare corporate minutes to reflect the transfer of the paintings from the Herralds to the corporation. A few days later Hoyt brought a copy of the corporate minutes reflecting the transfer of art objects from the Herralds to the corporation to Morgan's office in order to have Morgan turn the minutes over to the Internal Revenue Service. The Herralds had had their attorney prepare the corporate minutes during 1966. They stated that a special meeting of the board of directors was held on July 18, 1962, at which time art objects were transferred personally *152 from the Herralds to the corporation. Leda Herrald had signed the minutes as president of the corporation. A special meeting of the board of directors was not held on July 18, 1962. On May 13, 1966, Leda Herrald told Morgan that she had the invoices for the art sold to Mitzi Briggs and that these invoices showed a cost for the art objects lower than what she sold them for to Mrs. Briggs. Prior to the criminal fraud proceedings against Leda Herrald, she contacted two of the shops where she had purchased art objects. She requested one proprietor to alter her business records so that they would not reveal art sales to her. She asked the other whether his records were accurate enough to determine what the nature of her purchases had been. On May 7, 1971 Leda Herrald was convicted of willfully and knowingly making, subscribing and filing a joint income tax return for 1965 knowing it not to be correct as to every material matter in that she and her husband had received additional income from the sale of art objects in the amount of $2,624. OPINION Respondent takes the position that the income from the sale of art objects to Mitzi Briggs is properly reportable by Hoyt and *153 Leda Herrald. Petitioners argue that the income is properly reportable by Leda Exclusives. Leda Herrald advanced this contention in the criminal trial. The jury rejected this contention, at least for the taxable year of 1965, and found Leda Herrald guilty of willfully making and subscribing her 1965 income tax return knowing it was not true and correct as to every material matter. With regard to 1963, the fact that the jury could not agree on a verdict is irrelevant to the resolution of whether the Herralds received taxable income from the sale of art to Mitzi Briggs. A review of the evidence supports the contention that the 1963 and 1965 art sales were made by the Herralds personally. The Herralds personally selected the art objects that were ultimately sold to Mitzi Briggs and paid for them with checks drawn on their personal checking account. The checks issued by Mitzi Briggs in payment for the art objects were, except in two instances, made payable to Leda Herrald who endorsed these checks in her own name. There is no evidence to support the assertion that the sales were made by the corporation or that the art was ever owned by the corporation. The record discloses *154 that Leda Exclusives was in the business of selling women's ready-to-wear clothing. All of the evidence reveals that this activity yielded all of the corporate income. There is no evidence that the corporation received any income from the sale of art. It is clear that the idea of attributing the art sales to the corporation arose only after the commencement of the Internal Revenue Service investigation. It was after a conference with Woodrow Morgan regarding the Service's investigation that the Herralds had corporate minutes prepared to mislead respondent's agents into believing that the art purchased by the Herralds was transferred to the corporation and then sold to Mitzi Briggs for little or no profit. Based upon the entire record, the only conclusion that can be drawn is that the Herralds personally conducted the art sales to Mitzi Briggs and personally received the proceeds therefrom. The evidence is clear and convincing that Hoyt and Leda Herrald fraudulently understated their taxable income for the years 1963 and 1965. The only defense raised by Leda Herrald is that the income from the sale of art to Mitzi Briggs was corporate income and therefore not reportable *155 by them personally. This argument has been shown to be without merit. There can be no disputing the fact that the Herralds knew a profit was being made on the sale of art objects to Mitzi Briggs. The Herralds also knew that the income generated from the art sales was reportable on their income tax returns. In fact, Leda Herrald was convicted of subscribing to a false 1965 income tax return. When the Herralds asked Woodrow Morgan to prepare their 1963 income tax return, Mr. Morgan asked questions pertaining to checks he cashed for Mr. Herrald. Mr. Herrald did not disclose that these checks were proceeds from the sale of art objects. It was not until after respondent's agents commenced their investigation that Morgan was informed of the Herralds' art business. The attempts of the Herralds to mislead the respondent's agents is also an indication of fraud. The Herralds initially denied having sold art objects. Leda Herrald contacted some of her suppliers in an attempt to have them change their records and thereby erase any connection between her and the art objects. Furthermore, the Herralds had false corporate minutes prepared in an attempt to have it appear that the corporation *156 made the art sales. The only conclusion which can be drawn from the evidence presented is that the Herralds engaged in a business, the profits from which they fraudulently failed to report on their 1963 and 1965 income tax returns. Petitioners contend that Leda Herrald is relieved from liability for the taxable years 1963 and 1965 for penalties due with respect to the joint return of Hoyt and Leda Herrald under the provisions of section 6653 (b)[4] and for tax and penalties under section 6013(e). Section 6013(e) relieves an "innocent spouse" of liability for tax on sums omitted from a joint return if three basic *157 conditions are met: (1) the omission is in excess of 25 percent of the amount of gross income stated on the return;(2) the spouse in signing the return does not know of, and had no reason to know of, such omission; and (3) taking into account all the facts, including whether or not the spouse significantly benefited from the omitted items of gross income, it would be inequitable to hold her liable. Blaine S. Fox,61 T.C. 704, 716 (1974). The Herralds' returns omitted income in excess of 25 percent of the amount of gross income stated on the return. But as for the second requirement, we are convinced that Leda Herrald knew or had reason to know of the omission of income and that she benefited directly and indirectly from the items omitted from gross income. Furthermore, we conclude that it would not be inequitable to hold Leda Herrald liable for the deficiency in tax for the taxable years 1963 and 1965 attributable to the omission of the proceeds from the sale of art objects to Mitzi Briggs. The evidence clearly shows that Leda Herrald knew of the earnings from the sale of art objects and there is absolutely no evidence presented to support the contention that *158 she did not know of or did not benefit from such omissions. Howard B. Quinn,62 T.C. 223, 229-232 (1974), affd. 524 F.2d 617 (7th Cir. 1975); Blaine S. Fox,supra;Raymond H. Adams,60 T.C. 300, 303-304 (1973); Altman v. Commissioner,475 F.2d 876 (2d Cir. 1973), affirming a Memorandum Opinion of this Court; Jerome J. Sonnenborn,57 T.C. 373, 381-383 (1971). Furthermore, for the taxable year 1965, Leda Herrald was convicted of signing a joint income tax return knowing that it omitted income from the sale of art objects. Further evidence which would negate the application of section 6013(e) or the saving provision of section 6653(b) is the fact that in preparation of the 1963 income tax return, Morgan discussed the return with both the Herralds. Leda Herrald knew what was on the return and could easily determine that income had been omitted. Her knowledge of the omission is also evidenced by the fact that she attempted to have her suppliers change their records and the fact that she signed corporate minutes which she knew to be false and which she knew attempted to transfer art *159 to the corporation after the fact. In summary, it can be said that Leda Herrald was intricately involved in the sale of the art objects to Mitzi Briggs. She knew that a profit was being made, and she knew that the proceeds were not being reported on the joint 1963 and 1965 income tax returns; furthermore, there is no evidence to show that she did not benefit from the omission and in fact an inference can be drawn that she did so benefit. Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Herrald, Inc., dba Leda Exclusives, docket No. 5076-70; and Estate of Hoyt W. Herrald, deceased, Leda Herrald, administratrix, and Leda Herrald, surviving spouse, docket No. 989-72.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. An unreported case (N.D. Ca. May 7, 1971, docket no. Cr-70-150).↩
4. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud,--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.↩