SUSAN L. KETCHUM, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6032–78.     Filed December 7, 1981.

*Michael J. Cuddy*, for the petitioner.
*Barry C. Feldman*, for the respondent.

WILBUR, *Judge*: Respondent determined a deficiency of $18,910 in petitioner's Federal income tax for the taxable year 1974. Respondent further determined that an addition to tax under section 6653(a)[1] in the amount of $945.50 was appropriate. We are called upon to determine whether petitioner is to be relieved from liability for these amounts as an "innocent spouse" under section 6013(e).

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Susan L. Ketchum (hereafter referred to as Susan or petitioner) and Thomas B. Ketchum (hereafter referred to as Thomas) filed a joint Federal income tax return for the taxable year 1974. At the time this suit was commenced, Susan had her legal residence in New York, N.Y.

Susan and Thomas began filing joint returns as early as 1960 and did so continuously through 1975. From 1965 onward, Thomas, an attorney, prepared their returns. Thomas was involved in several business endeavors, and prepared the joint returns in connection with his preparation of the returns of these various enterprises.

Susan's main role in the preparation of the couple's income tax returns was to furnish her husband with her W–2 statement. Susan never reviewed their returns in detail, and she never saw the returns from Thomas' business ventures.

In 1971, Thomas began traveling a lot and lived for awhile in England. In February of 1972, Susan and Thomas separated and never lived together again. Susan continued to live in New York with their children.

Susan's relationship with Thomas outwardly continued to be friendly. Susan never made any demands upon him for support since she did not believe that he had, or was earning, any money and because she was able to support herself and the children through her own employment.

The only real financial benefit she received from Thomas came about as a result of a settlement from a lawsuit concerning the distribution of money from one of Thomas' businesses which had been terminated. From this, Susan received $1,000 per month for a 1-year period, including part of 1974. This money was intended to be used by Susan to support herself and the children. Except for this settlement and occasional small gifts for the children, Susan received no support from Thomas.

During 1974, Thomas was the president and sole shareholder of T. B. Ketchum & Son, Inc. (hereinafter referred to as Ketchum & Son), a corporation which had elected to be treated

as a "small business corporation" under the provisions of subchapter S of the Internal Revenue Code of 1954. Thomas timely filed a Form 1120S, U.S. Small Business Corporation Income Tax Return, on behalf of Ketchum & Son for the 1974 taxable year. This return showed a loss of $49,094.[2]

Early in 1975, Thomas informed Susan that he was going to Hong Kong, but that he wished to file their 1974 Federal income tax return before he left. Thomas subsequently brought to her a completed return. Susan did not review the return in detail, but rather examined it primarily with the view towards determining the correctness of the portions dealing with her own income. Thomas briefly discussed the return with her, relating the fact that Ketchum & Son had sustained a loss which was reflected on their joint return. Susan did not examine the remainder of the return to see if her husband was receiving any other income. Thomas did not bring with him the Ketchum & Son return. Beyond what has been described above, Susan's only other actions with respect to this return were to furnish Thomas with her W–2 Form and to sign the return.

The return, as filed, claimed an overpayment of $4,146.53, due primarily to the inclusion of the $49,094 business loss attributable to Ketchum & Son. This loss was shown on Form 1040, Schedule E, Part III (Income or Losses from Partnerships, Estates or Trusts, Small Business Corporations) by giving the name T. B. Ketchum & Son, Inc., checking the box labeled "small business corporation," entering the employer identification number, and recording a loss ($49,094). Susan received the refund check, which she spent on support for the children. When Thomas returned from Hong Kong in the summer of 1975, he inquired of the refund check, told Susan

---

[2] This figure was computed on the return as follows:

| | |
|---|---|
| Gross receipts | $30,841.59 |
| Less: Cost of goods sold | 46,967.00 |
| Gross profit (loss) | (16,126.00) |
| Less: Other deductions | 32,968.00 |
| Taxable income (loss) | (49,094.00) |

that he needed money, and she gave him approximately $1,500. They were divorced in 1977.

Susan never received any of the income from Ketchum & Son. She has no records of the corporation relating to the deductions claimed by Ketchum & Son on their 1974 return. Furthermore, she has no personal knowledge of the transactions or events which purportedly gave rise to the expenses claimed as deductions.

In his statutory notice of deficiency, respondent disallowed $74,076.74 of the deductions claimed by Ketchum & Son, resulting in an increase in the corporation's undistributed taxable income.[3] This in turn resulted in an increase to Thomas and Susan's 1974 taxable income.[4]

## OPINION

Generally, where a husband and wife file a joint return, the tax is computed on the couple's aggregate income and their liability with respect to the tax becomes joint and several. Sec. 6013(d)(3). Since petitioner filed a joint 1974 Federal income tax return with her husband, and does not claim mistake, fraud, or duress in having done so, she may be held jointly and severally liable for the deficiency which she does not contest on the merits.

The parties have stipulated that petitioner has no records of Ketchum & Son relating to the deductions claimed on the corporation's 1974 income tax return, and, further, that petitioner has no personal knowledge of the transactions or events which purportedly gave rise to the expenses claimed as deductions. At trial, petitioner offered no evidence or testimony concerning the propriety of the questioned deductions. Nor

---

[3]A subch. S corporation is not subject to tax on its corporate income. Sec. 1372(b)(1). However, each shareholder must include in gross income his pro rata share of the corporation's undistributed taxable income. Sec. 1373(b). Thus, a denial of a deduction to Ketchum & Son would result in an understatement of income by Thomas as reflected on his joint return filed with Susan.

[4]Viewed another way, the respondent disallowed the $49,094 loss deduction claimed on the joint return, and further increased taxable income by $24,982.74 reflecting income from the corporation which should have been reported in the first instance.

was she able to show that the deficiency was not due to negligence or intentional disregard for the rules and regulations or that, if it was, such conduct was excusable. See *Capodanno v. Commissioner*, 69 T.C. 638, 650 (1978), affd. 602 F.2d 64 (3d Cir. 1979). It is evident, therefore, that the petitioner has failed to satisfy her burden of showing the asserted deficiency and addition to tax to be improper. Rule 142(a), Tax Court Rules of Practice and Procedure.

Instead, petitioner seeks refuge in section 6013(e), the "innocent spouse provision." She claims that she had no knowledge that the loss deducted on their return was incorrect, that she relied on her husband's word that he had sustained such a loss, and that it would be unjust and inequitable to hold her responsible for her husband's wrongdoings. Respondent asserts she does not qualify for relief as an innocent spouse under the statute.

Section 6013(e)(1) provides:

SEC. 6013(e). SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES.—

(1) IN GENERAL. Under regulations prescribed by the Secretary or his delegate, if—

(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,

(B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and

(C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.

All of these three elements must be proven by the petitioning spouse in order to gain entitlement to relief as an innocent spouse. *Quinn v. Commissioner*, 524 F.2d 617, 626 (7th Cir. 1975); *Estate of Jackson v. Commissioner*, 72 T.C. 356, 360 (1979); *Galliher v. Commissioner*, 62 T.C. 760, 761 (1974); *Allen v. Commissioner*, 61 T.C. 125 (1973), affd. on this issue, revd.

and remanded on another issue 514 F.2d 908 (5th Cir. 1975); *Adams v. Commissioner*, 60 T.C. 300, 303 (1973). There is little dispute over Susan's having satisfied subparagraphs (B) and (C), and we therefore concentrate our attention upon the gross income test of subparagraph (A).

In applying the gross income test, section 6013(e)(2)(B) provides:

SEC. 6013(e)(2). SPECIAL RULES.—For purposes of paragraph (1)—

\*    \*    \*    \*    \*    \*    \*

(B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A).

Given this explicit cross-reference to section 6501(e)(1)(A), we must examine that provision in some detail. Section 6501(e) provides an exception to the general rule governing the statute of limitations on assessment and collection. In the case of a substantial omission from gross income, a 6-year limit prevails in lieu of the normal 3-year period. Since the test for determining whether there exists a substantial omission is extremely similar to that used in section 6013(e)(1)(A) for determining whether the omission is large enough to justify relief, it seems only natural that Congress would incorporate the tests which it had previously promulgated for section 6501(e).

Section 6501(e)(1)(A) provides:

SEC. 6501(e). SUBSTANTIAL OMISSION OF ITEMS.—Except as otherwise provided in subsection (c)—

(1) INCOME TAXES.—In the case of any tax imposed by subtitle A—

(A) GENERAL RULE.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—

(i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and

(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner

adequate to apprise the Secretary or his delegate of the nature and amount of such item.

Respondent contends that under section 6501(e)(1)(A)(ii), in determining the amount omitted from gross income for purposes of section 6013(e)(1)(A), we should not take into account the $24,982.74 understatement since the Ketchum's individual income tax return disclosed on Schedule E the existence of the subchapter S corporation, Ketchum & Son, along with its employer identification number and the amount of the loss. Since the return provided information as to both the source and amount of the loss, and since further information could be derived from the subchapter S return, respondent argues there was a disclosure within the meaning of section 6501(e)(1)(A)(ii).

We agree with respondent that there was a disclosure either in the return or in a statement attached to the return. In *Roschuni v. Commissioner*, 44 T.C. 80 (1965), the taxpayers were shareholders of a subchapter S corporation which on its return reported a capital gain of $34,190 from the sale of a hotel. In a statement attached to the small business corporation return, a computation was shown detailing how the $34,190 gain was arrived at by use of the installment reporting method. On their individual income tax return, petitioners reported on Schedule D a capital gain of $34,190 with this notation: "See—Gilbert Hotel, Inc. (Schedule D, Form 1120-S) $34,190.00."

We held that there was no omission from gross income because the capital gain from the sale of the hotel was disclosed in the individual return. We first decided the computational schedule qualified as a "statement attached to the return," in this case, the subchapter S return. Next we held that the subchapter S return had been "incorporated by reference in petitioners' individual return." *Roschuni v. Commissioner, supra* at 84. We concluded that the statement on the petitioners' return, together with the statement attached to the subchapter S return, was sufficient and adequate to apprise the respondent of the nature and amount of the omitted item, and the 3-year statute, rather than a 6-year

period, was applicable. See *Rose v. Commissioner*, 24 T.C. 755 (1955).

The Eighth Circuit followed our approach in *Benderoff v. United States*, 398 F.2d 132 (8th Cir. 1968), revg. 270 F. Supp. 87 (S.D. Iowa 1967). The issue presented in that case was whether the subchapter S return must be considered along with the shareholders' individual returns in determining whether the omitted income has been adequately disclosed for purposes of applying section 6501(e). Since the individual return specifically referred to the subchapter S return, it was held that the two returns must be considered in tandem in order to resolve the adequate disclosure question, primarily because the purpose of the corporate information return was to "provide the government with information as to the accuracy of the shareholders' return of Subchapter S corporate income." *Benderoff v. United States, supra* at 135. Accordingly, it was held that the 6-year statute of limitations was inapplicable. We therefore hold that due to disclosure in the subchapter S return, which return was specifically referred to in the Ketchums' individual return, there was no omission from gross income in the present case.

The congressional directive to apply the law of section 6501(e) when construing the innocent spouse provisions seems abundantly clear. The history of section 6013(a) tells us that "Whether or not an omission meets this test is to be determined in a manner *similar to the test applied under existing law* in determining, for purposes of the 6-year statute of limitations, when an omission in excess of 25 percent of gross income exists." H. Rept. 91–1734, to accompany H.R. 19774 (Pub. L. 91–679), at 3 (1970); S. Rept. 91–1537 (1970), 1971–1 C.B. 606, 607. (Emphasis supplied.) Section 6013(e)(2)(B) puts into effect this intent. We applied section 6501(e)(1)(A), albeit section 6501(e)(1)(A)(i), in determining whether the percentage test of section 6013(e)(1)(A) was met in *Estate of Klein v. Commissioner*, 63 T.C. 585 (1975), affd. 537 F.2d 701 (2d Cir. 1976). The Second Circuit, to whom appeal in the present case would lie, strongly approved of this handling of the issue. See also *Quinn v. Commissioner*, 524 F.2d 617, 626 (7th Cir. 1975),

affg. 62 T.C. 223, 230 (1974) (specifically applying section 6501(e)(1)(A)(ii) to section 6013(e)(1)(A)).

We confront a long line of cases clearly stating that references in an individual return to a partnership or subchapter S return incorporate those returns for purposes of section 6501(e)(1)(A), including whether an "amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item." In providing relief for innocent spouses, Congress deliberately used the identical language by specific cross-reference, and did so specifically to invoke the "test applied under existing law in determining, for purposes of the 6-year statute of limitations, when an omission in excess of 25 percent of gross income exists." H. Rept. 91–1734, *supra*; S. Rept. 91–1537, *supra*. The Second Circuit has emphasized the "literally identical" criteria applicable to both the innocent spouse and statute of limitations issue and indicated that the results should be the same in both cases. See *Estate of Klein v. Commissioner, supra*, 537 F.2d 701 (2d Cir. 1976). See also *Stroman v. Commissioner*, 77 T.C. 514 (1981). In view of the statute, the legislative history, and the line of precedent we confront, we cannot say that reference to the nature and source of omitted subchapter S income is sufficient disclosure to bar application of the 6-year statute, but, at the same time, is insufficient disclosure to bar innocent spouse relief.

We recognize that section 6013(e) is a remedial statute passed to correct the perceived injustice which sometimes results from the imposition of joint liability, and for this reason, should not be given an unduly restrictive reading. *Allen v. Commissioner*, 514 F.2d 908, 915 (5th Cir. 1975); *Sanders v. Commissioner*, 509 F.2d 162, 167 (5th Cir. 1975). We also sympathize with petitioner's circumstances and view the result reached in this case as unfortunate. However, the benefits of filing a joint return carry correlative disadvantages and relief from these disadvantages under existing law clearly does not encompass petitioner's circumstances. See *Sonnenborn v. Commissioner*, 57 T.C. 373, 381 (1971). And, as we have been instructed, "The applicability of this section * * * does not depend entirely on the equities of each particular situation." *Estate of Klein v. Commissioner, supra* at 702. At this

point, inadequacies in the relief provided will have to await reconsideration of the innocent spouse provisions by the Congress.[5]

*Decision will be entered under Rule 155.*

---

[5]The requirement that there be a 25-percent or greater omission from gross income in order to gain innocent spouse status has been much criticized. Many commentators question the wisdom in cutting off those spouses who, although truly innocent in an equitable sense, jointly signed a return omitting less than the requisite percentage. See e.g., Emory, "New law alleviates innocent spouse-joint return problem on omitted income," 34 J. of Tax. 154 (1971); Zahn, "The Innocent Spouse Rule," 58 A.B.A.J. 1228 (1972) ("Considered in a cynical vein, it would seem that good tax planning would dictate that a fraudulent spouse, looking out for the best interests of the innocent spouse, should make certain that the 25 percent criterion is exceeded"); Panny & Faust, "The Innocent Spouse Provisions of the Internal Revenue Code: In Search of Equity," 32 U. Miami L. Rev. 137, 158 (1977); Boyd & Boyd, "IRC Secs. 6013(e) and 6653(b)—The Innocent Spouse Provisions," 55 Taxes 19 (1977). Others simply find the provision irrational and self-defeating. For example, it has been suggested that the class of persons entitled to relief under section 6613(e)(1)(A) might just be those least deserving of that relief "because the frequency with which a spouse has reason to know of an omission may vary directly with the amount of the omission." Note, "Innocent Spouses' Liability for Fraudulent Understatement of Taxable Income on Joint Returns," 56 Va. L. Rev. 1268 (1970).