Susan L. KETCHUM,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 188, Docket 82–4094.

United States Court of Appeals,
Second Circuit.

Argued Sept. 16, 1982.
Decided Dec. 27, 1982.

Michael J. Cuddy, Brooklyn, N.Y., for petitioner-appellant.

Stephan J. Gray, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen. Michael L. Paup, Daniel F. Ross, Dept. of Justice, Washington, D.C., on the brief), for respondent-appellee.

Before MANSFIELD, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This appeal concerns the "innocent spouse" provision of the Internal Revenue Code, I.R.C. § 6013(e). That provision, when applicable, relieves a spouse who signs a joint tax return of tax liability for income omitted from the joint return and earned by the other spouse without the knowledge of the first spouse. Availability of the provision frequently turns, as in this case, on a determination of whether more than 25 percent of reported gross income has been omitted from the joint return. The appeal is from a February 11, 1982, decision of the United States Tax Court (Richard C. Wilbur, Judge), which held that the innocent spouse provision did not apply to relieve appellant Susan Ketchum of any liability resulting from the Commissioner's assessment of income earned by her former husband's subchapter S corporation. Because we conclude that the provision does apply to a portion of the tax liability imposed on Susan Ketchum, we reverse and remand the case for further proceedings.

## I

Susan Ketchum and her husband Thomas filed a joint federal income tax return for 1974. That return showed three sources of income or loss. The first was $21,858 of wages earned by Susan. The second was $10,262 received in settlement of a legal claim. The third was a $49,094 loss incurred by a subchapter S corporation, T.B. Ketchum and Son, Inc., wholly owned by Thomas. As a result of these three items, the Ketchums reported a $16,974 loss as their adjusted gross income, and received a $4,147 refund from the Internal Revenue Service for federal income taxes withheld from Susan's wages during 1974. The Ketchums were separated when they filed their 1974 tax return, and were divorced in 1977.

In 1978, the Commissioner sent to Susan a Statutory Notice of Deficiency for 1974. The Commissioner had reviewed the 1120S information return filed by Thomas' corporation in 1974, and had disallowed most of the deductions claimed on that return as lacking substantiation. The corporation had claimed $79,935 of expenses against gross revenue of $30,842, resulting in a net loss of $49,094. The Commissioner found only $5,859 of allowable expenses, resulting in a positive net corporate income of $24,983. The Commissioner concluded that since Thomas was the sole shareholder of the corporation, the Ketchums' 1974 return should have included this $24,983 of corporate net income, rather than the $49,094 corporate loss actually reported. The Commissioner thus found that the Ketchums had understated their 1974 income by $74,077. Based on this understatement, Susan, having signed their joint return, was personally liable for $18,910 of unpaid taxes plus a $954.50 penalty for negligence under I.R.C. § 6653(a). See I.R.C. § 6013(d)(3).

Susan Ketchum then petitioned the Tax Court for a redetermination of deficiency, claiming that the Commissioner had erred in disallowing the corporation's deductions. But when the Tax Court heard her petition, Susan had lost contact with Thomas and could produce no evidence to establish the propriety of the corporation's disallowed deductions. Since the taxpayer has the burden of proving a Notice of Deficiency improper, see Tax Ct.R. 142(a), the Tax Court would not disturb the Commissioner's finding of deficiency. The Court did, however, find that the Ketchums qualified for certain personal deductions and exemptions in 1974, and therefore reduced Susan's liability to $17,254.25 of taxes and a $862.71 penalty.

Susan also argued to the Tax Court that the Internal Revenue Code's "innocent spouse" provision, I.R.C. § 6013(e), relieved her of any liability resulting from the cor-

poration's disallowed deductions.[1] This provision grants relief from "the imposition upon innocent spouses of large liabilities for taxes and penalties attributable to income omitted from a joint return by the other spouse." S.Rep.No. 1537, 91st Cong., 2d Sess. 1 (1970) [hereinafter cited as Senate Report], *reprinted in* 1970 U.S.Code Cong. & Ad.News 6089, 6090. To qualify for the provision's protection, an innocent spouse must meet three requirements: the spouse neither knew of nor had reason to know of the omitted income, the spouse did not benefit from the omitted income, and the amount of omitted income, attributable to the other spouse, exceeds 25 percent of the gross income reported on the joint return. The Tax Court found that Susan had easily met two of the provision's requirements: she had no knowledge of the corporation's activities and she had received no benefit from the corporation's operations. However, the Tax Court concluded that Susan failed to meet the provision's threshold test specifying an omission of at least 25 percent of gross income. The Court found that no income had been omitted from the Ketchums' tax return. The Court reasoned that the Ketchums' increased tax liability stemmed from gross receipts that had been reported on the corporation's 1120S information return. Relying on *Estate of Klein v. Commissioner*, 537 F.2d 701 (2d Cir.),

*cert. denied*, 429 U.S. 980, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976), the Tax Court ruled that such receipts, if reported on an information return, are not considered "omitted" for purposes of the innocent spouse provision. The direct cause of the Ketchums' increased liability was the Commissioner's disallowance of the corporation's deductions, but the innocent spouse provision does not extend to overstated deductions, only understated income. *See Allen v. Commissioner*, 514 F.2d 908 (5th Cir.1975). While acknowledging that Susan was the victim of her ex-husband's irresponsible conduct, the Tax Court reluctantly decided that Susan could not qualify for the innocent spouse provision.

## II

When Congress enacted the innocent spouse provision in 1971, it restricted the provision's applicability to omissions that are greater than 25 percent of gross income to ensure that this special relief would extend only "to those cases where the income omitted represents a significant amount relative to the reported income." Senate Report, *supra*, at 3, *reprinted in* 1970 U.S.Code Cong. & Ad.News at 6091.[2] To assist the courts in determining what constitutes an omission of gross income for purposes of the innocent spouse provision, Congress added the following special rule: "the amount

1. Spouse relieved of liability in certain cases.—
    (1) In general.—Under regulations prescribed by the Secretary, if—
    (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,
    (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and
    (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.
I.R.C. § 6013(e).

2. Presumably, Congress feared that a high absolute threshold would deny the provision's benefits to many low-income innocent spouses who would be forced to pay relatively small but personally burdensome additional taxes. A low absolute threshold, on the other hand, would extend relief to many high-income innocent spouses faced with personally trivial amounts of additional taxes. Some commentators have criticized Congress' technique of extending relief based on a specified percentage of omitted income. *See* Emory, *New Law Alleviates Innocent Spouse-Joint Return Problem on Omitted Income*, 34 J. Tax'n 154 (1971); Zahn, *The Innocent Spouse Rule*, 58 A.B.A.J. 1228 (1972).

omitted from gross income shall be determined in the same manner provided by section 6501(e)(1)(A)." I.R.C. § 6013(e)(2)(B). Section 6501 is the statute of limitations for assessing and collecting taxes. By its terms, the Commissioner has three years to collect most taxes, unless a taxpayer omits more than 25 percent of reported gross income, in which case the Commissioner has six years to assess the tax. This extension gives the Commissioner extra time to detect large sums of omitted income, but only if that income is not disclosed on the taxpayer's returns. Consequently, the statute of limitations adds the following rule, which is incorporated by reference in the innocent spouse provision:

> In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

I.R.C. § 6501(e)(1)(A)(ii). This rule equates omission from gross income with nondisclosure of gross income.

By linking the innocent spouse provision to the statute of limitations,[3] Congress apparently intended the courts to apply the same 25 percent test in calculating omitted income for purposes of both sections. See Estate of Klein v. Commissioner, supra, 537 F.2d at 705. Cases interpreting both sections have established that income reported on information returns, like subchapter S corporations' 1120S forms, is disclosed for purposes of section 6501(e) and therefore section 6013(e). These cases have dealt with partners who report partnership income on their personal 1040 forms and shareholders who report subchapter S corporate income on their 1040's. See, e.g., Estate of Klein v. Commissioner, supra, 537 F.2d at 703 (partnership); Benderoff v. United States, 398 F.2d 132 (8th Cir.1968) (subchapter S corporation). In both areas, the information returns are considered disclosed and gross income belonging to the taxpayer and appearing on the information return is considered not omitted. Therefore, we agree with the Tax Court that any of the Ketchums' gross income that was reported on the corporation's information return was not omitted from their joint return for purposes of the innocent spouse provision.

### III

This conclusion, however, does not end the case. Section 6501(e)(1)(A)(ii) requires determination of the amount of the Ketchums' gross income that was disclosed on the corporation's information return. To make this determination, we must examine the substantive provisions of the Internal Revenue Code that govern the attribution of subchapter S corporate income and losses to corporate shareholders. According to I.R.C. § 1373(b), an electing subchapter S corporation's shareholder must include in individual gross income "an amount equal to the corporation's undistributed taxable income." In addition, under I.R.C. § 1374(b), "a net operating loss [of the corporation] shall be allowed as a deduction from [individual] gross income" of such a shareholder. Under these two provisions, the corporation's 1120S form disclosed two items that related to the Ketchums' gross income. First, the form revealed that the corporation had no undistributed taxable

---

**3.** We note in passing that Congress' decision to link the innocent spouse provision with the statute of limitations has created certain anomalies. In some situations, the taxpayer will argue that income should be considered disclosed on a return, and therefore not omitted, in order not to extend the statute of limitations. But in other cases with similar facts, the taxpayer will argue that the income was undisclosed, and therefore omitted, in order to gain the benefit of the innocent spouse provision. A victory for the Commissioner under section 6501(e) can be used against the Internal Revenue Service in section 6013(e), and vice versa. This asymmetry is particularly striking because, in interpreting either section, courts must determine whether the disputed income was disclosed "in a manner adequate to apprise the Secretary," even though, with the innocent spouse provision, the spouse's review of the return in question ought to be more significant than the Secretary's.

income, which indicated that the Ketchums derived no gross income from the corporation that year. Moreover, the corporation showed a net operating loss of $49,094 for 1974, and that loss provided the Ketchums with a deduction of that amount from their gross income in 1974.

When the Commissioner disallowed the corporation's 1974 deductions, that decision had two distinct effects on the Ketchums' joint tax return. First, their $49,094 deduction from gross income, which had been permitted under section 1374(b), was disallowed. Second, because the corporation's undistributed taxable income was $24,983 higher than the income disclosed on the corporation's return, the Ketchums' gross income also increased by $24,983 under I.R.C. § 1373(b) compared to what they had reported on their individual return.[4] The innocent spouse provision can provide Susan Ketchum no relief from the tax consequences of the first effect, because the innocent spouse provision does not cover disallowed deductions on an individual return. 26 C.F.R. § 1.6013–5(d) (1982); *see Allen v. Commissioner, supra,* 514 F.2d at 916. But the provision does apply to the second effect. The increase in the corporation's taxable income figure gave the Ketchums an additional $24,983 of gross income that had not been disclosed on either their own 1040 form or the corporation's 1120S form.[5] That gross income was therefore omitted from their return within the meaning of section 6013(e). Because that $24,983 was more than 25 percent of the Ketchums' reported gross income,[6] Susan Ketchum met

the requirements of section 6013(e)(1)(A). Since the Tax Court has already determined that she has met the provision's two remaining requirements, I.R.C. § 6013(e)(1) (B), (C), the innocent spouse provision relieves Susan from any tax liability flowing from that $24,983 of gross income.

This analysis is consistent with our previous ruling in *Estate of Klein v. Commissioner, supra. Klein* involved the relationship between the innocent spouse provision and a partnership's informational return. As we have done here, the Court in *Klein* began by looking at the substantive provisions underlying the taxation of income—there, the income of partners and their partnership. In contrast to subchapter S corporation shareholders, whose gross income includes a pro rata share of their corporation's *taxable income* (or operating losses), partners' gross income includes a distributive share of the partnership's *gross income.* I.R.C. § 702(a); *see also id.* § 702(c) (defining partners' gross incomes). When the Court in *Klein* looked to see what amount of the partner's individual gross income was disclosed on the partnership's information return, it looked at the partner's distributive share of the partnership's gross income, which in that case happened to be the same as its gross receipts. *See Estate of Klein v. Commissioner, supra,* 537 F.2d at 702–03.

The lesson of *Klein,* which we follow today, is that for purposes of the innocent spouse provision, the relevant figure is not the number of dollars transferred from the

4. We have no disagreement with the dissent's observation that the disallowance of the corporation's deductions did not create or increase the true taxable income of the corporation. But the fact that the corporation's taxable income figure, as redetermined by the Commissioner, is $24,983, whereas the corporation's return reported no taxable income has significance for the application of the innocent spouse provision, which requires determination of the amount of the Ketchums' gross income that was *disclosed* on the corporation's return.

5. We also have no disagreement with the dissent's observation that the taxable income of a subchapter S corporation is attributed to its shareholders. Thus, the corporation's true tax-

able income was always attributable to the Ketchums. But the failure to disclose the true figure entitles Mrs. Ketchum to the benefit of an exculpatory provision that turns on disclosure. The appearance on the corporation's return of the deductions that were disallowed does not alter the fact that $24,983 of the corporation's taxable income was not disclosed.

6. The Ketchums had two sources of positive income in 1974: $21,858.78 of wages and $10,-262.00 received as a legal settlement. These sources combine for a total gross income of $32,120.78, of which 25 percent is $8,030.20. The 25 percent requirement of section 6013(e)(1)(A) is met because the omitted gross income, $24,983.00, is greater than $8,030.20.

business entity's information return to the taxpayer's 1040 form, but the amount of the taxpayer's gross income, as defined by the Internal Revenue Code, that is disclosed on the information return.[7] In *Klein,* the amount of gross income disclosed was the partner's distributive share of the partnership's gross receipts. In this case, the amount of the Ketchums' gross income disclosed was the corporation's reported undistributed taxable income, which was zero.

It is not altogether surprising that the result in this case would have been different had Thomas Ketchum's business entity been a partnership rather than a subchapter S corporation.[8] Although it is sometimes said that a subchapter S corporation has the tax characteristics of a partnership, in fact the Internal Revenue Code treats these two entities and the income they generate differently. *See* 3 B. Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 95.6.1, at 95–76 (1981); *see also* I.R.C. § 61(a)(7), (13) (distinguishing between dividends and distributive shares of partnership income). For instance, a partner need not pay taxes on interest earned on tax-exempt municipal bonds held by the partnership, but a shareholder would have to pay taxes on the same income if the bonds were held by the sub-

chapter S corporation. Because of such discrepancies, Congress is currently considering legislation that would more completely conform the tax treatment of subchapter S corporations to that of partnerships. *See* Staff of the Joint Comm. on Taxation, 97th Cong., 2d Sess., *Description of H.R. 6055: Subchapter S Revision Act of 1982* (Comm. Print 1982). However, as long as the sections of the Code governing subchapter S corporations differ from the partnership provisions, we are obliged to apply those sections differently, and taxpayers will gain or lose from those differences as the case may be.

We are aware that the Eighth Circuit and the Tax Court have declined to apply the six-year statute of limitations in cases in which the disputed income was deemed not to be omitted because of adequate disclosure on an 1120S form of a subchapter S corporation. *See Benderoff v. United States, supra; Roschuni v. Commissioner,* 44 T.C. 80 (1965). To whatever extent our decision today conflicts with the rationale of these precedents, we decline to follow them. We note, however, that neither of these cases presented precisely the same fact pattern that arises in this case.[9]

---

**7.** In *Klein,* the figure transcribed from the partnership's information return onto the taxpayer's 1040 was the partner's share of the partnership's net income. But the Court in that case did not stop with the net income figure; it looked through to the partnership's gross receipts.

**8.** Had Ketchum's corporation been a partnership, its entire gross income would have constituted the Ketchums' distributive share because Thomas Ketchum would have been the sole partner. Therefore, if, in such a case, the Commissioner disallowed expenses that had been deducted from the partnership's gross income, the innocent spouse provision would have provided no relief because disallowed deductions are not covered by the provision. *See* 26 C.F.R. § 1.6013–5(d) (1982). We need not now decide whether in such a case the partnership's gross income would be calculated after "cost of goods sold" had been subtracted, as I.R.C. § 702(c) seems to require, or before, as *Klein* apparently determined.

**9.** In no reported decision of which we are aware, concerning the 25 percent determination, has the Commissioner disallowed corpo-

rate deductions and thereby increased the subchapter S corporation's undistributed taxable income and, hence, the taxpayer's gross income. Indeed, the two cases cited in the text were atypical in that the disputed items of income were disclosed on 1120S information forms and passed through to the taxpayers' gross incomes by a specific Code provision, in a manner reminiscent of partnership transactions. *Roschuni* involved capital gains that were improperly reported on the installment method on the subchapter S corporation's return. Under I.R.C. § 1375(a), certain subchapter S capital gains, like the one in that case, can be passed directly through to the shareholders. Similarly, *Benderoff* involved a cash distribution to shareholders that was reported on the subchapter S corporation's return. *See Benderoff v. United States,* 270 F.Supp. 87, 89–90 (S.D.Iowa 1967), *rev'd on other grounds,* 398 F.2d 132 (8th Cir.1968). Because of the manner in which the *Benderoff* distribution was made, it constituted taxable income to the shareholders. *See* I.R.C. § 1373(b); 26 C.F.R. § 1.1375–4(b) (1982). Since this income was disclosed on the corporation's information return, it was not omitted from the taxpayer's

## IV

We therefore remand this case to the Tax Court for it to redetermine Susan Ketchum's liability. As we discussed above, Susan Ketchum is liable for whatever increased taxes and penalties result from the Commissioner's disallowing the $49,094 deduction on their joint personal tax return, pursuant to I.R.C. § 1374(b).[10] However, because of the innocent spouse provision, she is not responsible for any additional tax liability or associated penalties that arise out of the $24,983 increase to the Ketchums' gross income attributable, under I.R.C. § 1373(b), to the redetermined distributable net income of the corporation.

Reversed and remanded for further proceedings consistent with this opinion.

VAN GRAAFEILAND, Circuit Judge, dissenting:

If I understand my colleagues' position, it is that, to the extent the Commissioner's disallowance of deductions from a Subchapter S corporation's gross income moves the corporation's taxable income from the red into the black, the amount involved should be treated as an "increase", or actually the creation, of taxable income. That amount, my colleagues hold, can then be treated, under section 6013(e) of the Internal Revenue Code, as omitted income of the wife of the corporation's sole shareholder. I respectfully disagree.

The existence vel non of income is not determined by bookkeeping entries or tax return figures, but by the facts. *See Doyle v. Mitchell Brothers Co.*, 247 U.S. 179, 185–88, 38 S.Ct. 467, 469–470, 62 L.Ed. 1054 (1918); *Slaff v. CIR*, 220 F.2d 65, 68 (9th Cir.1955); *Commissioner v. Union Pac. R. Co.*, 86 F.2d 637, 639 (2d Cir.1936). "[T]axation deals with realities" and "substance not form controls in the determination of tax problems." 1 *Mertens Laws of Fed Income Tax* § 5.09. Accordingly, an audit which discloses false or fraudulent deductions does not "increase" taxable income; it merely restates it correctly. *Lowy v. CIR*, 288 F.2d 517, 519–20 (2d Cir.1961), *cert. denied*, 368 U.S. 984, 82 S.Ct. 596, 7 L.Ed.2d 523 (1962). Since a Subchapter S corporation's income, whether or not distributed, is passed through or attributed to its shareholders, *Pants Rack, Inc. v. United States*, 669 F.2d 198, 200 (4th Cir.1982); *United States v. Richardson*, 469 F.2d 349 (10th Cir.1972); 7 *Mertens Law of Fed Income Tax* § 41B.24, it is not correct, in my opinion, to treat improper deductions therefrom as omitted income of the taxpaying shareholders. It is the shareholder's duty to pay the tax, *United States v. Nathan*, 536 F.2d 988, 990 n. 2 (2d Cir.1976); *William H. Leonhart*, 27 T.C.M. (CCH) 443, 462 (1968), *aff'd sub nom. Leonhart v. C.I.R.*, 414 F.2d 749 (4th Cir. 1969), and the amount paid should be based on an accurate report of corporate income, *id.* at 750.

Assuming for the argument that, despite the provisions of Treasury Regulation, 1.6013–5(d), 26 CFR 1.6013–5(d), erroneous

---

return for purposes of the statute of limitations.

**10.** Holding Susan Ketchum liable for taxes resulting from the disallowed section 1374(b) deduction taken on the Ketchums' joint tax return not only follows the statute, but it also produces an equitable result. Because of the section 1374(b) deduction, Susan was able to avoid paying any taxes on the wages she earned and the legal settlement she received in 1974. Now that this deduction has been disallowed, Susan is, in effect, being required to pay the federal income taxes due on those sources of her income.

To apply the innocent spouse provision to the disallowed section 1374(b) deduction might also be inconsistent with the provision's requirement that the innocent spouse gain no benefit from the omitted item of income. *See* I.R.C. § 6013(e)(1)(C). Although the Tax Court held that Susan received no benefit from Thomas' corporation, arguably she profited from the corporation's loss by using it to extinguish her own tax liability in 1974. However, because the innocent spouse provision does not cover disallowed deductions, *see* 26 C.F.R. § 1.6013–5(d) (1982), we need not decide whether the benefit Susan derived from the corporation's loss would provide an independent ground for not applying the innocent spouse provision to the disallowed section 1374(b) deduction. We do note, however, that Susan gained no equivalent benefit from the corporation's taxable income that was omitted from the Ketchums' joint tax return.

deductions might in some instances be treated as omissions from income, the Tax Court correctly held that the omissions in the instant case were disclosed "in the return or in a statement attached to the return", see 26 U.S.C. § 6501(e)(1)(A)(ii), and therefore could not be taken into account in determining the amount omitted from the taxpayer's gross income. *See Colony, Inc. v. CIR,* 357 U.S. 28, 36, 78 S.Ct. 1033, 1037, 2 L.Ed.2d 1119 (1958); *Uptegrove Lumber Co. v. CIR,* 204 F.2d 570, 573 (3d Cir.1953); 10 *Mertens Law of Fed Income Tax* § 57.-37.

The corporate return, which must be treated as part of the taxpayer's return, see *Estate of Klein v. CIR,* 537 F.2d 701, 703–06 (2d Cir.1976), shows gross receipts of $30,-841.59. Against these, the following deductions were claimed but disallowed:

| | | |
|---|---|---|
| Loan Reduction and Interest | $ | 828.00 |
| Equipment | | 1,948.00 |
| Miscellaneous (Transportation and Entertainment) | | 41,297.00 |
| Interest Expense | | 10,500.00 |
| Fire Loss | | 13,666.00 |
| Error in Addition in Return | | 30.00 |
| Depreciation | | 5,807.00 |
| | $ | 74,076.00 |

These deductions were not simply disclosed in the returns; they were disclosed with a red flag flying. The provisions of section 6501(e)(1)(A)(ii) clearly were applicable. I agree with the Tax Court that there was no omission from the gross income of the taxpayer and would affirm.[1]

---

1. The addition of footnotes 4 and 5 to the majority opinion seems to indicate that my colleagues agree with the basic premises of this dissent. If this is so, I confess that I do not understand how my colleagues arrive at their ultimate holding.

Each shareholder of a Subchapter S corporation is required "to assume that, on the last day of the corporation's taxable year, there occurred a pro rata distribution of the corporation's 'undistributed taxable income' for that year, and there is attributed to each shareholder the amount he would have received as a dividend if there had been such a distribution. This amount must be included by the shareholder as a dividend distributed by the corporation on the last day of its taxable year, and is included in the shareholder's gross income for his taxable year in or with which the corporation's year ends." 7 *Mertens Law of Fed Income Tax* § 41B.26 at 48. Section 6501(e)(1)(A)(ii) provides that "[i]n determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, *or in a statement attached to the*

*return,* in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item" (emphasis supplied).

The erroneous deductions from the gross income of both the corporation and the Ketchums were "disclosed" when these amounts were included in the corporation's 1120S form attached to the Ketchum's return. "The language of the statute does not require a specific disclosure of the dollar amount omitted. All the statute does require is a clue to the existence of the omitted item. The clue need not be a detailed revelation of each and every underlying fact, but it must be sufficient so that if the Service had made a reasonable follow-up of the clue, the adjustment ultimately made would have been disclosed." 10 *Mertens, supra,* § 57.37 at 65. Certainly the unitemized deduction of $41,297 for "Miscellaneous (Transportation and Entertainment)" meets this requirement. If section 6501(e)(1)(A)(ii) and Treasury Regulation 1.6013–5(d) mean what they say, I cannot conclude, as do my colleagues, that there was an "omission" from the Ketchums' joint return so as to qualify Mrs. Ketchum for relief under 26 U.S.C. § 6013(e)(1)(A).