APRIL G. DOUGLASS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Douglass v. Commissioner
Docket No. 14348-81.
United States Tax Court
T.C. Memo 1984-369; 1984 Tax Ct. Memo LEXIS 302; 48 T.C.M. (CCH) 538; T.C.M. (RIA) 84369; July 19, 1984. Thomas B. McCullough, Jr., for the petitioner. Michael C. Cohen, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $8,157 in petitioner's Federal income tax for 1977. Two issues are presented for decision: 1. Whether a 1977 income tax return filed in the names of petitioner and her former husband was a joint return within the meaning of section 6013(d)(3); [1] and if so 2. Whether petitioner is relieved of liability for a deficiency in tax for 1977 by the "innocent spouse" provisions of section 6013(e). All of the facts are stipulated. Petitioner, a resident of Manhattan Beach, California, when the petition was filed, was married in October 1970 to Geoffrey D. Laxton (hereinafter Laxton) and their marriage continued through 1977. A timely joint Federal income tax return form for 1977 in the names of petitioner and Laxton was filed with the Internal Revenue Service Center, *305 Fresno, California. On March 20, 1978, petitioner and Laxton entered into a Marital Settlement Agreement which includes the following provisions: 9. Husband and Wife agree to file joint Federal and state personal income tax returns for the calendar year 1977. All taxes due on the joint return shall be paid by husband; all tax refunds shall be divided one-half to Husband and one-half to Wife. 10. Each party hereto does hereby agree that he or she will sign, execute, acknowledge and deliver any and all instruments, papers and documents which are now or hereafter may be necessary to effectuate and carry out the provisions of this Agreement whenever so requested to do so by the other party. This agreement was approved and adopted by the Los Angeles County Superior Court which entered an interlocutory judgment of dissolution of marriage in July 1978. The divorce of petitioner and Laxton became final on August 1, 1978. The 1977 return bearing the purported signatures of petitioner and Laxton is dated April 15, 1978, and indicates on its face that it was prepared by Anthony Hess & Associates. The parties have stipulated that petitioner did not in fact sign the return. *306 The signature which purports to be hers was placed on the return by Laxton or some other individual acting on his behalf. At no time did petitioner see the return before it was filed with the Internal Revenue Service (IRS). Apart from this purported return, no other Federal income tax return was filed by or on behalf of petitioner for 1977. Neither petitioner nor the IRS has been able to locate copies of returns or other records indicating whether petitioner and Laxton filed joint or separate returns for 1970 through 1976, the period of their marriage. The income tax return purporting to be a joint return for petitioner and Laxton includes as income wages of $19,358 paid to petitioner by Pan American World Airways, Inc. (Pan American); real estate sales income earned by Laxton in the amount of $56,613, reported on schedule C; $826 in interest income; and a loss in the amount of $48,358, for a net income amount of $28,439. After credits for tax payments, an overpayment of $1,938 was claimed on the return and was refunded. Laxton received the refund and petitioner did not share in it. Of the loss of $48,358 reported on the return, the sum of $43,300 was shown to have been *307 derived from Manhattan Beach Home Entertainment, Inc. (MBHE), a subchapter S corporation in which petitioner and Laxton owned a 40-percent interest.Laxton was a member of the board of directors of MBHE but was not otherwise engaged in the operation of its business. Respondent mailed a joint notice of deficiency to petitioner and Laxton. Apart from certain mechanical or mathematical adjustments, the only change in the reported income and deductions made in the notice of deficiency was with respect to the amount of MBHE's 1977 loss. Laxton's and petitioner's distributive share of the MBHE's loss was reduced from the $43,300 claimed on the purported joint return to $18,429, causing an increase in taxable income of $24,871. The deficiency set forth above was determined accordingly. Petitioner was not actively involved in any way with MBHE and had no knowledge that the tax return filed by that company (Form 1120S) for 1977 was erroneous. 1. The Joint Return Issue
Section 6013(a) authorizes a husband and wife to make jointly a single return of their income. Section 1.6013-1(a)(2), Income Tax Regs. *308 , provides that: "A joint return of a husband and wife (if not made by an agent of one or both spouses) shall be signed by both spouses." In spite of this requirement in the regulation, the rule has long been settled that an income tax return which is intended by both spouses to be a joint return will be regarded as such even in the abence of the signature of one of the spouses. See, e.g., Federbush v. Commissioner,34 T.C. 740, 757 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); Kann v. Commissioner,18 T.C. 1032, 1045 (1952), affd. 210 F.2d 247, 251 (3d Cir. 1953); Howell v. Commissioner,10 T.C. 859, 866 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949); Silverton v. Commissioner,T.C. Memo. 1978-433, affd. without published opinion 647 F.2d 172 (9th Cir. 1981). The question of the spouse's intent as to the filing of a joint return is one of fact. Federbush v. Commissioner, 325 F.2d at 2; O'Connor v. Commissioner,412 F.2d 304, 309 (2d Cir. 1969), *309 affg. on this issue a Memorandum Opinion of this Court; Estate of Campbell v. Commissioner,56 T.C. 1, 12-13 (1971). The burden of proof rests with petitioner. Welch v. Helvering,290 U.S. 111, 113 (1933); Howell v. Commissioner,supra at 866. [2]
Unfortunately, we do not have the advantage of the oral testimony of either petitioner or Laxton in this case. Notwithstanding the stipulated fact that petitioner did not actually sign the return, however, we think the available evidence shows that it was intended to be and was a joint return. We *310 begin with the fact that petitioner and Laxton in their Marital Settlement Agreement expressly agreed to file a joint Federal income tax retrun for 1977 and they further agreed that each of them would sign any and all instruments and documents necessary to carry out their agreement. See Lane v. Commissioner,26 T.C. 405, 409 (1956). This agreement on filing a joint tax return for 1977 was made on March 20, 1978, less than a month before the date of the signatures shown on the return. There is no suggestion in the record that petitioner had decided within that short period to violate the terms of the Marital Settlement Agreement by refusing to participate in the filing of a 1977 joint return. Indeed, it seems unlikely that the interlocutory and final decrees of divorce would have been entered in July and August 1978, respectively, if any issue had been raised about the matter. Attached to the 1977 return is a Form W-2 which we infer was issued to petitioner as an employee of Pan American. The return reflects the amount of petitioner's Pan American wages and the amount of the Federal income tax withheld as shown on the Form W-2. The stipulated facts include no *311 clue as to how Laxton or the return preparer obtained this Form W-2.Because petitioner had substantial wages and did not file a separate return of that income, the most reasonable inference is that petitioner turned the Form W-2 over to Laxton or to the return preparer with the understanding that the form would be used in the preparation of a joint return as contemplated by the Marital Settlement Agreement. [3] Otherwise, we would be required to infer that petitioner intended as early as April 15, 1978, to violate not only the Marital Settlement Agreement but the revenue laws requiring the filing of returns as well. *312 Petitioner emphasizes that Laxton or the return preparer endorsed her name on the Treasury check as well as the return and thereby obtained all of the proceeds of the refund of overpaid taxes computed on the return. The refunded taxes, she points out, were withheld from her wages and no part of them was paid by Laxton. Petitioner's and Laxton's intention as to the filing of a joint return, however, must be determined as of the date the return was filed. Who benefited from the refund is not, therefore, a controlling consideration except to the extent that it may reflect the parties' intent when the return was filed. Although Laxton's actions in cashing the refund check and retaining the proceeds may have been wrongful, we cannot in this proceeding resolve the disputes growing out of what petitioner's counsel describes as a "bitter" divorce controversy. 2. The Innocent Spouse Issue
Although petitioner steadfastly maintains that the 1977 return was not a joint return and, for that reason, she should be relieved of the determined deficiency, [4] she argues alternatively that the innocent spouse provisions of section 6013(e) relieve her of liability for the deficiency. The *313 stipulated facts do not show that petitioner is entitled to relief under that section. To qualify for relief under section 6013(e), [5] the evidence must show: 1. That there was omitted from the gross income reported in the joint return an amount properly includable therein which is attributable to Laxton and which is in excess of 25 percent of the amount of gross *314 income stated on the return; 2. That petitioner did not know of, and had no reason to know, of the omission; and 3. That it would be inequitable to hold petitioner liable for the deficiency. Sec. 1.6013-5(b), Income Tax Regs. To qualify for relief under section 6013(e), all three of those elements must be established. Quinn v. Commissioner,524 F.2d 617, 626 (7th Cir. 1975), affg. 62 T.C. 223, 230 (1974); Estate of Jackson v. Commissioner,72 T.C. 356, 360 (1979); Mysse v. Commissioner,57 T.C. 680, 697 (1972). *315 We have held about that the return filed in the names of petitioner and Laxton was a joint return; that part of the first element of the section is therefore met. As to the second element, the parties have stipulated that: "Petitioner was not actively involved in any way with MBHE and had no knowledge that the tax return filed by that company (Form 1120S) for the year 1977 was erroneous." We interpret this stipulation to mean that petiioner has met the second element of section 6013(e) as well. Most of the argument on brief is devoted to the question whether petitioner has shown that she has met the part of the first element requiring that there be a 25-percent omission from gross income. The joint return, as explained above, shows that a $43,300 loss was deducted by MBHE in computing taxable income. The notice of deficiency reduces that loss to $18,429. The effect of the adjustment is to increase petitioner's and Laxton's taxable income by $24,871. Respondent argues that this adjustment involves no omission from gross income, only a decrease in the amount of an allowable deduction, because the subchapter S corporation (MBHE) loss passed through the corporation to petitioner *316 and Laxton. Petitioner argues that the decrease of MBHE's loss constitutes an omission from gross income within the meaning of section 6013(e)(1)(A). We think respondent's position is clearly correct. Under the statutory scheme, as applicable to the year 1977, income and losses are passed through subchapter S corporations to the shareholders. Section 1373(a) provides that the undistributed taxable income "shall be included in the gross income of the shareholders" of the corporation. Section 1374(a) provides that a net operating loss of such a corporation "shall be allowed as a deduction from gross income of the shareholders of such corporation"; under section 1374(b), each shareholder is allowed a deduction "equal to his portion of the corporation's net operating loss." By claiming an excessive deduction for an MBHE net operating loss, therefore, the joint return did not omit gross income; it merely overstated a deduction. Section 6013(e)(1)(A) refers not to overstated deductions, but rather, *317 to omitted gross income. As explained in Allen v. Commissioner,514 F.2d 908, 915 (5th Cir. 1975), affg. as to this issue and revg. and remaining in part on other issues 61 T.C. 125 (1973): The statute was intended to grant relief only for tax liabilities arising from omissions from gross income by one spouse; it provides no relief from tax liability which results from a fraudulent deduction, for example. Therefore, both disallowed deductions and additional deductions, allowable but not taken, should be disregarded when dealing with innocent spouse relief under section 6013(e). [6] [Fn. ref. omitted.] See also Estate of Klein v. Commissioner,63 T.C. 585, 595 (1975), affd. 537 F.2d 701 (2d Cir. 1976); Resnick v. Commissioner,63 T.C. 524, 527 (1975). Because the disputed deficiency in this case is attributable to the partial disallowance of the claimed MBHE loss, section 6013(e) does not afford petitioner the coveted relief. *318 The parties debate Ketchum v. Commissioner,77 T.C. 1204 (1981), revd. and remanded 697 F.2d 466 (2d Cir. 1982), but neither the opinion of this Court nor that of the court of appeals provides any comfort for petitioner. In that case, the joint return claimed a deduction for a $49,094 loss incurred by a subchapter S corporation. On examination of the return, the Commissioner disallowed the full amount of the loss deduction and determined that the taxpayer had unreported income of $24,983 from the corporation. The Tax Court in Ketchum cited the special rule of section 6013(e)(2)(B) (see fn. 4, supra) to the effect that "the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A)." In computing the amount of gross income omitted from a return under section 6501(e)(1)(A), an amount disclosed in the return or a statement attached to the return is not taken into account. In other words, omission from gross income is equated with nondisclosure of gross income. Relying upon Roschuni v. Commissioner,44 T.C. 80 (1965), *319 this Court in Ketchum reasoned that the subchapter S corporation return was incorporated by reference into the taxpayer's income tax return, and, because the subchapter S corporation return disclosed the source of the loss deductions, such amount was not omitted from the taxpayer's return. See also Benderoff v. United States,398 F.2d 132 (8th Cir. 1968); Estate of Klein v. Commissioner,supra; H. Rept. No. 91-1734, to accompany H.R. 19774 (Pub. L. 91-679), at 3 (1970); S. Rept. No. 91-1537 (1970), 19711 C.B. 606, 607. Because the same kind of disclosure was made in the instant case with respect to the subchapter S corporation loss as in Ketcheum, this Court's opinion in Ketchum supports respondent's position that petitioner does not qualify for section 6013(e) relief. The court of appeals opinion in Ketchum v. Commissioner, supra, is likewise of no assistance to petitioner. That court emphasized that the joint return as supplemented by the subchapter S corporation return in that case disclosed and claimed a $49,094 loss deduction; as a result of the audit, the Commissioner not only disallowed the *320 full amount of the loss deduction but also determined that the taxpayer had unreported income of $24,983 from the subchapter S corporation. The court of appeals reasoned that, because section 6013(e) allows relief only with respect to omitted gross income, it was necessary to examine the substantive Code provisions that govern the attribution of subchapter S corporate income and losses to corporate shareholders. On this basis, the court found that no relief was allowable with respect to the loss deduction claimed under section 1374(b) but that relief was provided for the unreported income because the corporate return did not constitute disclosure of the omitted income passed through the corporation to the taxpayer-shareholder under section 1373(b), stating (697 F.2d at 472): Susan Ketchum is liable for whatever increased taxes and penalties result from the Commissioner's disallowing the $49,094 deduction on their joint personal tax return pursuant to I.R.C. section 1374(b). However, because of the innocent spouse provision, she is not responsible for *321 any additional tax liability or associated penalties that arise out of the $24,983 increase to the Ketchums' gross income attributable, under I.R.C. section 1373(b), to the redetermined distributable net income of the corporation. [Fn. ref. omitted.] In the instant case, respondent determined only that MBHE had a smaller loss than the one on which the joint return's disputed MBHE deduction was based.Thus only the portion of the Ketchum opinion of the appellate court dealing with the disallowance of the excessive deduction is apposite here. The reasoning of the court of appeals in Ketchum on the issue of the excessive deduction supports respondent's position in this case. [7]
*322 To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. In O'Connor v. Commissioner,412 F.2d 304, 309↩ (2d Cir. 1969), the court held that if the evidence indicates that one spouse did not sign a purportedly joint return, the burden shifts to respondent to produce additional evidence on the issue. It has been stipulated that petitioner did not sign the return. Based on the evidence as contained in the stipulation of facts and the supplemenal stipulation of facts, however, we find that respondent has met this burden of going forward and we note that it is with petitioner that the ultimate burden of proof rests.
3. On brief, petitioner asserts that because she was living in Texas and Laxton was living in California at the time the return was filed, she could not have intended to file a joint return with him. Petitioner's place of residence at the time of the filing of the return has not been established as one of the stipulated facts. Even were we to accept petitioner's statement as fact, however, we think it would support respondent's position that in light of her agreement made on Mar. 20, 1978, to file a joint return, petitioner, more likely than not, assumed that Laxton would file a joint return in her absence.↩
4. A holding in this case that the return was not a joint one would not relieve petitioner of income tax liability for 1977. The notice of deficiency would cast on her in any event the burden of proving that the determined deficiency was erroneous. She would be in the position of having filed no return and, in such circumstances, an assessment could be made at any time. Sec. 6501(c)(3). It appears that she would owe tax on her community share of her salary, Laxton's real estate business earnings, and the reported interest income, reduced by the MBHE loss; her tax would be computed at rates applicable to married persons filing separate returns. In view of our conclusion that she filed a joint return, however, we need not reach this question. See Stanley v. Commissioner,81 T.C. 634↩ (1983).
5. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. (e) Spouse Relieved of Liability in Certain Cases.-- (1) In general. Under regulations prescribed by the Secretary, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know, of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) Special Rules.--For purposes of paragraph (1)-- (A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A)↩.
6. Sec. 1.6013-5(d), Income Tax Regs., provides: (d) Omission of income. Section 6013(e) of the Code shall apply only to income which is properly includible as gross income under chapter 1 of the Code, which was, in fact, omitted from a joint return. Section 6013(e)↩ shall not apply to a tax deficiency resulting from erroneous or fraudulent deductions, claims, or other evasions or avoidances of tax.
7. Because we have concluded that petitioner has not met the sec. 6013(e)(1)(A) gross income omission requirement, we need not consider the section 6013(e)(1)(C) requirement-- taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission."↩